PHIL MAGIDSON, DOING BUSINESS AS MAGIDSON CONSTRUCTION COM-
PANY, (PLAINTIFF), RESPONDENT, v. MORRIS STERN, IDA STERN,
MRS. LUELLA B. SAYMAN, JUSTIN S. BREWER AND W. L. HEMING-
WAY, LAST BOARD OF DIRECTORS AND TRUSTEES OF THOMAS M.
SAYMAN INVESTMENT COMPANY, A CORPORATION, AND LOUIS BELL,
(DEFENDANTS), APPELLANTS; ARTHUR J. MICHEL, DOING BUSINESS
AS SOUTH SIDE TERRAZZO MARBLE & TILE COMPANY, AND COOK
PAINT & VARNISH COMPANY, A CORPORATION, ASSIGNEE OF J. W.
MILLER, (DEFENDANTS), RESPONDENTS; ST. LOUIS UNION TRUST
COMPANY, A CORPORATION, DEFENDANT.—148 S. W. (2d) 144.

St. Louis Court of Appeals. Opinion filed March 4, 1941.

Opinion Modified and Motion for Rehearing Overruled March 18, 1941.

*Walter Lambert* for Arthur J. Michel, doing business as South Side Terrazzo Marble & Tile Company.

*Jesse E. Bishop* for appellants Thomas M. Sayman Investment Company, a Corporation, Louis Bell and Ida Stern.

*Otto O. Fickeissen* of counsel for said appellants.

*Newell S. Ferry* for respondent Phil Magidson, doing business as Magidson Construction Company.

BENNICK, C.—This is an equitable mechanic's lien suit which was brought for the purpose of determining and enforcing various rights, interests, and liens as between certain mechanic's lien claimants, the claimants of other liens and rights, and the owners of the property involved in the suit, and for the further purpose of marshaling, applying, and distributing the proceeds of any sale of the property among the parties to the suit according to their respective legal and equitable rights thereto.

The suit was brought by Phil Magidson, doing business as Magidson Construction Company, the principal contractor, while joined as

defendants were Morris Stern and Ida Stern, his wife, the owners of the property by an estate by the entirety; Arthur J. Michel, doing business as South Side Terrazzo, Marble & Tile Company, a lien claimant by virtue of having furnished labor and material at the special instance and request of Magidson; Cook Paint & Varnish Company, assignee of one J. W. Miller, who had likewise furnished labor and material at the special instance and request of Magidson; Thomas M. Sayman Investment Company, the owner and holder of two deeds of trust upon the property; and one Louis Bell, who was the purchaser of the property at a foreclosure sale under one of the deeds of trust owned and held by Thomas M. Sayman Investment Company, and who purchased the same as the admitted straw party and agent of such company.

Other parties originally named as defendants, and not identified or referred to herein, were dismissed during the progress of the case below.

The property in question consists of certain contiguous lots improved by three two-story brick tenement buildings, which contain flats or living quarters for forty-eight families, and which are known and numbered as 3924-3960 Kennerly Avenue, in the City of St. Louis, Missouri.

On November 4, 1930, Lorraine Realty and Investment Company, the then owner of the property, executed a deed of trust on the same to St. Louis Union Trust Company, as trustee for Thomas M. Sayman Investment Company, to secure the payment of a series of notes aggregating $40,500 in principal amount. Such deed of trust was duly recorded on November 18, 1930, and was thereafter continuously held and owned by Thomas M. Sayman Investment Company until the subsequent foreclosure of the property under power of sale contained in such deed of trust.

On December 30, 1930, the Lorraine Realty and Investment Company conveyed the property by three separate warranty deeds to Morris Stern and Ida Stern, his wife, so as to constitute them the owners of the property by an estate by the entirety, subject, however, to the above deed of trust held and owned by Thomas M. Sayman Investment Company. Such deeds to the Sterns were thereafter recorded on January 8, 1932, more than a year after the time of their execution.

On January 19, 1932, Morris Stern alone entered into a written contract with plaintiff, Magidson, as general contractor, for the furnishing of the labor and material for the erection and completion of twelve brick additions and wooden porches upon the three tenement buildings situated upon the real estate in question.

Such improvements consisted of the erection of four rectangular brick two-story wings on the rear of each building, or twelve wings in

all, with wooden porches connecting the wings both upstairs and down. Each of the wings contained two bathrooms and toilets on each floor; and all of the wings were attached and built onto the rear walls of the then existing buildings, so that each wing consisted of three new outer walls, a foundation, and a roof, with the inner wall comprising the portion of the existing rear wall of the building to which the wing was attached. In this manner, the wings, when completed, became integral parts of the then existing buildings, and were not distinct and independent improvements put upon the land, nor was the case tried below upon any such theory on behalf of any lien claimant. On the contrary, both plaintiff and the other lien claimants referred to and described the work in their respective pleadings as the alteration, improvement, and reconstruction of, and the making of repairs and additions to, the three then existing buildings; and with the evidence supporting such characterization of the work, the same will be so regarded and considered for all purposes on this appeal, and particularly so as regards any question of preference as between the mechanic's liens, if any, and the lien of the deed of trust which had been placed against the land with the buildings thereon some fourteen months before the commencement of the erection of the additions.

As has been noted, the written contract with plaintiff was signed by Morris Stern alone, and did not include the signature of his wife, Ida Stern, so that among the chief issues in the case is that of whether Ida Stern may be held liable to a personal judgment in plaintiff's favor for the amount of his unpaid account for labor and material entering into the construction of the work, or, even if not so personally liable for want of any privity of contract between herself and plaintiff, whether there was nevertheless such a showing of her husband's agency for her and of her participation with him in the matter of the making of the improvements as in any event to have bound her interest in the property held by her and her husband as tenants by the entirety.

There is no question but that the accounts of plaintiff and the other two lien claimants were just and true, that of plaintiff, for the unpaid balance of $825.84, having accrued on June 27, 1932; that of Arthur J. Michel, doing business as South Side Terrazzo Marble & Tile Company, for the unpaid balance of $127.75, having likewise accrued on June 27, 1932; and that of Cook Paint & Varnish Company, assignee of J. W. Miller, for the unpaid balance of $200, having accrued on August 20, 1932. Similarly, there is no question but that all proper steps were taken by such lien claimants to perfect their liens, and that this equitable mechanic's lien suit was thereafter duly brought and prosecuted.

On January 22, 1932, three days after the signing of the written contract between plaintiff and Morris Stern for the making of the

improvements, the latter and his wife, Ida Stern, executed and delivered a second deed of trust on the property to St. Louis Union Trust Company, as trustee for Thomas M. Sayman Investment Company, to secure the payment of a principal note of even date therewith for the sum of $18,000, together with certain interest notes as in the deed of trust described. Such deed of trust was duly recorded on January 30, 1932, and was thenceforth continuously owned and held by Thomas M. Sayman Investment Company.

Such second deed of trust and notes secured thereby were concededly executed by Morris Stern and Ida Stern, his wife, for the express purpose of obtaining the money to make the improvements upon the property; and not only were such improvements made with the knowledge and consent of Thomas M. Sayman Investment Company, but in fact the money represented by the notes secured by the second deed of trust was paid out by Thomas M. Sayman Investment Company as the work progressed, some of it directly to Magidson, the principal contractor, or else to the subcontractors and materialmen on orders which he gave. Such latter evidence was of coure offered upon the issue as to whether Thomas M. Sayman Investment Company, under such facts and circumstances, might be properly said to have so actively participated with the Sterns in having the improvements made for its benefit as to have indicated an intention on its part to waive the priority of the lien of its first deed of trust, antedating the commencement of the work in point of time, in favor of the mechanic's liens of plaintiff and the other persons who furnished labor and material in the doing of the work.

On April 8, 1937, during the pendency of the suit in the court below, the property was sold at foreclosure by St. Louis Union Trust Company, as trustee, under power of sale contained in the first deed of trust, executed on November 4, 1930, by Lorraine Realty and Investment Company, and recorded November 18, 1930; and was bought in at such sale by Louis Bell, who acted in such respect as the admitted straw party and agent of Thomas M. Sayman Investment Company, and who has since held title to the property for the use and benefit of such company under a trustee's deed executed to him on April 12, 1937, and recorded April 21, 1937.

In his petition, which was drawn upon the theory of *quantum meruit*, plaintiff, Magidson, the principal contractor, alleged that at the special instance and request of Morris Stern and Ida Stern, his wife, the owners of the property, he had furnished labor and material for the construction of the improvements as shown by his lien account, each and every item of which was reasonably worth the amount charged therefor.

He further alleged that Thomas M. Sayman Investment Company, while owning and holding the first deed of trust executed by Lorraine Realty and Investment Company, had entered into an agreement with

Morris Stern and Ida Stern, his wife, before the furnishing of the labor and material for the improvements, whereby the Sterns were to make the improvements for the special benefit of said Thomas M. Sayman Investment Company; that pursuant to such agreement, Thomas M. Sayman Investment Company had advanced the funds for the making of the improvements; and that by reason of such agreement and the ordering of the improvements by Morris Stern and Ida Stern, his wife, plaintiff's mechanic's lien should take priority over the lien of such first deed of trust owned and held by Thomas M. Sayman Investment Company, even though the same antedated the commencement of the work in point of time.

Plaintiff's prayer was that judgment be entered in his favor against Morris Stern and Ida Stern, his wife, in the sum of $825.84, with interest thereon from June 27, 1932, on which date demand had been made for payment, and that said amount, interest, and costs be adjudged a mechanic's lien against the property prior and superior to the liens of both deeds of trust owned and held by Thomas M. Sayman Investment Company.

In like fashion, defendants Arthur J. Michel, doing business as South Side Terrazzo, Marble & Tile Company, and Cook Paint & Varnish Company, assignee of J. W. Miller, filed cross-bills, setting up that they had furnished labor and material for the work at the special instance and request of plaintiff, Magidson, who had a contract with the Sterns as owners, and praying that judgment be entered against Magidson for the amounts of their respective accounts, with interest ($127.75, with interest from June 27, 1932, in the case of Arthur J. Michel, doing business as South Side Terrazzo, Marble & Tile Company, and $200, with interest from August 20, 1932, in the case of Cook Paint & Varnish Company, assignee of J. W. Miller), and that said accounts, interest, and costs be adjudged mechanic's liens against the property prior and superior to the liens of both deeds of trust owned and held by Thomas M. Saymen Investment Company.

Defendants Morris Stern and Ida Stern, his wife, answered jointly, admitting that they had been the owners of the property at the time mentioned in plaintiff's petition, but denying each and every other allegation in plaintiff's petition contained.

Defendant Louis Bell entered his appearance as a party defendant in the case, and thereafter filed an answer, setting up that he was seized of an estate in fee simple in the property, having acquired title by purchasing the property at the foreclosure sale under the first deed of trust owned and held by Thomas M. Sayman Investment Company, which deed of trust had constituted a lien against the property long prior to the time when plaintiff, under contract with the Sterns, had commenced the making of the improvements upon the property.

Defendant Thomas M. Sayman Investment Company filed no answer, but instead, as the court found in its decree, was regarded as having appeared in the person of its straw party and agent, Louis Bell, who held title to the property for its use and benefit, and consequently represented its interest in asserting the priority of the lien of the deed of trust under which the property had been sold to him over and above the mechanic's liens of plaintiff and the two other lien claimants.

In its decree, the court found that while Thomas M. Sayman Investment Company had held and owned the deed of trust executed by Lorraine Realty and Investment Company, it had entered into an arrangement with Morris Stern and Ida Stern for the erection of the additions to the buildings, for which it was to furnish the funds therefor; that in pursuance of such arrangement, Morris Stern and Ida Stern had entered into a contract with plaintiff, Magidson, for the doing of the work; that Thomas M. Sayman Investment Company had retained control over and paid out the proceeds of the loan to Morris Stern and Ida Stern as the work progressed; and that because of all such action and participation on the part of Thomas M. Sayman Investment Company, the lien of the deed of trust executed to it by Lorraine Realty and Investment Company, though antedating the commencement of the work in point of time, should be postponed and made subordinate to the mechanic's liens of plaintiff and the two other lien claimants, whose labor and material had entered into the construction of the work.

The court further found that such mechanic's liens were also prior and superior to the lien of the deed of trust executed by Morris Stern and Ida Stern after the making of the contract and the furnishing of the first item of labor and material for the work.

It was therefore considered, ordered, and adjudged by the court that plaintiff, Magidson, should have judgment on his petition against defendants Morris Stern and Ida Stern for the aggregate amount of $1131.92, which comprised the unpaid balance of his account, with interest due thereon, and that such judgment, interest, and costs should be a mechanic's lien against the property prior and superior to the liens of both deeds of trust, and to the deed executed to Louis Bell; that defendant Arthur J. Michel, doing business as South Side Terrazzo, Marble & Tile Company, should have judgment on his cross-bill against plaintiff, Magidson, in the aggregate amount of $175.09; that Cook Paint & Varnish Company, assignee of J. W. Miller, should have judgment on its cross-bill against plaintiff, Magidson, in the aggregate amount of $273; that the judgments, interest, and costs awarded such two defendants should likewise be mechanic's liens against the property prior and superior to the liens of both deeds of trust, and to the deed executed to Louis Bell; that general and special executions should issue in conformity with the decree; that if

sufficient property could not be found to satisfy such judgments, interest, and costs, then the same, or the residue thereof, should be levied of the property charged with the mechanic's liens, which property the sheriff should thereupon proceed to sell according to law; and that out of the proceeds of the sale, satisfaction should be had, first, of the costs and expenses of sale and the costs of this suit; and, second, of the liens of the three lien claimants, after which, whatever balance remained, if any, should be paid over to the parties lawfully entitled thereto.

From such judgment and decree, appeals were thereafter duly taken to this court by defendants Morris Stern, Ida Stern, Thomas M. Sayman Investment Company, and Louis Bell.

After the taking of such appeals, and prior to the submission of the case in this court, appellant Thomas M. Sayman Investment Company was dissolved as a corporation by a decree of dissolution entered in the Circuit Court of the City of St. Louis, whereupon, on motion duly made in this court, Mrs. Luella B. Sayman, Justin S. Brewer, and W. L. Hemingway, the members of its last board of directors, and as such, its statutory trustees, were ordered and allowed to be substituted as appellants in the place of appellant Thomas M. Sayman Investment Company. [Watkins v. Mayer (Mo. App.), 103 S. W. (2d) 569.]

There is the further suggestion that after the taking of the appeals, and prior to the submission of the case in this court, appellant Morris Stern departed this life; and on motion of respondents Magidson and Michel, who have jointly suggested his death, the court is asked to substitute for him his heirs, who are said in the motion to be his children, Jess, Harry, and Melvin Stern, and his widow, Ida Stern.

There are two sections of the mechanic's lien act which have to do with the matter of substitution of parties in the event of the death of a necessary or proper party to a mechanic's lien suit, the one being section 3556, Revised Statutes Missouri 1939 (Mo. Stat. Ann., sec. 3166, p. 4998), and the other, section 3571, Revised Statutes Missouri 1939 (Mo. Stat. Ann., sec. 3181, p. 5010).

The former section, which relates to the ordinary mechanic's lien suit, provides that in the case of the death of any necessary or proper party, "whether before or after suit brought," the executor or administrator of such deceased person shall be made plaintiff or defendant, as the case may require, and it shall not be necessary to make the heirs or devisees of such deceased person parties to the suit, but that if there is no executor or administrator of such deceased person, then his heirs or devisees may be made parties.

The latter section, which has to do with who may be made parties to an equitable mechanic's lien suit of which the case at bar is one, provides that if any party to such action shall die or cease to exist, "during the pendency of said action before the judgment or order

of sale therein of said property," then the proper representatives, either administrator or other proper successor in right, shall be substituted by order of the court upon motion and notice of motion without formal revivor of the action.

There has been no administration of Morris Stern's estate (for the reason, it seems to be agreed, that he left no estate to be administered upon), and so it is that in the absence of an administrator or executor, the court is asked to substitute the persons named as the heirs of Morris Stern.

With children surviving, Ida Stern would of course have had no right of inheritance as an heir of her deceased husband, so that apart from any question of whether there was an estate for any one to inherit, there would in any event be no occasion for substituting her in her deceased's husband's stead upon the theory that she was his heir.

Nor, as we view the situation, would it be proper for the court to require the three children to come in and be made parties to the suit against their will, even though it is true that they would have been the heirs of their deceased father if he had left property of any sort to be inherited, which they for their part deny, and which those who seek their substitution as parties appellant in the case do not undertake to assert.

Inasmuch as a mechanic's lien cannot be declared and enforced in a proceeding to which the owner of the property to be affected by or charged with the lien is not a party, the act makes provision, in certain contingencies, for the substitution of the heirs of a deceased owner, who, by devolution of title, become the owners of the property upon his death. In such case, they are the proper successors in right of their deceased ancestor, since they, as the succeeding owners of the property, represent the interest to be affected by the lien. [Belcher v. Schaumburg, 18 Mo. 189.] However, they do not represent the interest primarily liable for the debt which forms the basis for the lien upon the property; and indeed they are only concerned with such debt of their ancestor to the extent that the property they inherit may be held subject to its payment. The personal representative of the deceased person properly represents the interest primarily liable for the debt; and while it is true that section 3556 does not recognize this fundamental distinction in the case of the ordinary mechanic's lien suit, the contrary seems to be true of section 3571, the equitable Mechanic's lien suit statute, which provides that in the event of the death of any party to a suit of the latter character, the proper representatives, "either administrator or other proper successor in right," shall be substituted by order of court without formal revivor of the action.

In the case at bar, the estate by the entirety of Morris Stern and Ida Stern, his wife, terminated upon the sale of the property at foreclosure prior to the entry of the decree by the court below (Wil-

liams v. Safety Savings & Loan Assn., 228 Mo. App. 135, 58 S. W. (2d) 787) ; and at the time of the entry of such decree, Louis Bell was the record owner of the property, holding the same for the use and benefit of Thomas M. Sayman Investment Company. Consequently, at his death, Morris Stern owned no interest in the property affected by or charged with the liens, but even if this had not been the fact, he would still have owned no interest in it subject to inheritance by his children. On the contrary, upon his death, his widow, Ida Stern, would have continued to own the entire estate of which she, no less than he, had been vested during their joint lives, not, however, by right of survivorship or as her husband's successor in right, but rather by virtue of the character of the original grants from Lorraine Realty and Investment Company, which had vested title in her and her husband as tenants by the entirety. [Otto F. Stifel's Union Brewing Co. v. Saxy, 273 Mo. 159, 201 S. W. 67; Ashbaugh v. Ashbaugh, 273 Mo. 353, 201 S. W. 72.] Under these facts, neither Ida Stern, the widow, nor Jess, Harry, and Melvin Stern, the children of Morris Stern, were successors in right as regards the interest affected by the liens; and the motion to have them substituted in his stead as parties appellant in the case should therefore be denied.

The question then arises whether, with the death of appellant Morris Stern suggested, we are in a position to hear and determine the pending appeal in the absence of some one having been substituted as his successor.

While sections 3556 and 3571, *supra,* make provision for the substitution of the proper successor in right in the event of the death of a party to a mechanic's lien suit, it is to be noted that so far as procedure is concerned, those sections relate to the procedure to be followed in the matter of substitution of parties during the pendency of the case in the circuit court, and do not purport to regulate and determine when and under what circumstances revivor and substitution may be necessary in the appellate court. On the contrary, such latter question is governed by the general statutes having to do with the matter of suggestion of death and substitution of parties in the appellate court, which statutes are no less applicable to a mechanic's lien case than to any other character of the case which may be the subject of appellate review.

It is provided by section 1220, Revised Statutes of Missouri, 1939 (Mo. Stat. Ann., sec. 1054, p. 1338), that in a case where there are several appellants, and one or more of them die before the cause is submitted, such death shall be suggested by the surviving appellants, whereupon (as the cases hold in construing the section) the cause may proceed, without a revivor, at the suit of the surviving appellants, so long as the interests of the decedent and the surviving appellants are not adverse. [Edwards v. Watson, 258 Mo. 631, 167 S. W. 1119;

Reineman v. Larkin, 222 Mo. 156, 121 S. W. 307; Hunleth v. Leahy, 146 Mo. 408, 48 S. W. 459.]

In the case at bar, the interest of Morris Stern, the deceased appellant, is in no sense adverse to that of the surviving appellants, Ida Stern, the statutory trustees of Thomas M. Sayman Investment Company, and Louis Bell. Indeed, his interest is identical with that of Ida Stern except for the question of her amenability to the personal judgment rendered against her; and so far as the other appellants are concerned, their interest goes only to the question of priority as between their liens and those of the mechanic's lien claimants, with which question Morris Stern was not at all concerned. Under such circumstances, it is not essential that a successor in right be substituted for Morris Stern in this court, so that notwithstanding our denial of the motion to bring in his heirs as his successors, the cause may proceed at the suit of the surviving appellants.

Along with the case has also been taken the motion of respondent Cook Paint & Varnish Company, assignee of J. W. Miller, to affirm the judgment because of the alleged failure of appellants to have complied with certain rules of this court. This motion should be overruled. Appellants have duly perfected their appeals by causing a certified copy of the record entry of the judgment appealed from to be filed in this court within the time allowed; and with this the situation, whatever remedy respondent Cook Paint & Varnish Company might have for any of the matters of which it complains could not be by motion to affirm the judgment. [Sechrist v. Hufty Rock Asphalt Co. (Mo. App.), 59 S. W. (2d) 767.]

This brings us at last to the merits of the case, embracing the questions, first, whether the three mechanic's lien claimants should have had their liens adjudged against the property; second, whether a personal judgment should have been entered in plaintiff's favor against Ida Stern; and third, whether the mechanic's liens, even if properly allowed against the property, should have been accorded priority over the first deed of trust owned and held by Thomas M. Sayman Investment Company, which deed of trust had been executed and recorded long prior to the time of the commencement of the making of the improvements.

The point with respect to the validity of the three mechanic's liens against the property has its basis in the fact that the written contract with plaintiff for the doing of the work was signed by Morris Stern alone, and did not include the signature of his wife, Ida Stern, the other tenant by the entirety.

It is now well settled that where property is held by both husband and wife as tenants by the entirety, any act affecting title must be by the joint act of both husband and wife, and neither alone, by his or her own individual act, may subject the property to a mechanic's lien. This in view of the nature of such estate in which both husband

and wife are seized of an indivisible entirety, so that, there being but the one estate, though vested in the two individuals, neither may affect the title of the property without the concurrence of the other. [I. R. Goldberg Plumbing Supply Co. v. Taylor, 209 Mo. App. 98, 237 S. W. 900; R. D. Kurtz, Inc., v. Field, 223 Mo. App. 270, 14 S. W. (2d) 9; Badger Lumber & Coal Co. v. Pugsley, 227 Mo. App. 1203, 61 S. W. (2d) 425.]

Respondent lien claimants recognize the necessity for showing the concurrence of both Morris Stern and Ida Stern in order to establish their right to liens against the property, but insist that even though Ida Stern did not herself sign the contract with plaintiff, her concurrence with her husband was nevertheless established by proof of her active participation in the doing of the work. In other words, respondents found their case upon the theory that Ida Stern had constituted her husband her agent to act for her, as well as for himself, in his dealings relative to the property which she owned with him as tenants by the entirety, which agency was to be implied from the facts and circumstances bearing upon the question as the same tended to support the inference that such a *status* or relationship had actually existed.

In cases where this question arises, it is held that mere knowledge on the part of the wife that improvements are being made on her real estate, and mere passive acquiescence therein on her part, will be insufficient in and of itself to show that her husband had acted as her agent so as either to bind her personally, or to warrant the charging of a lien on her real estate for the cost of the labor and material going into the improvements. [Berkshire v. Holcker, 202 Mo. App. 433, 216 S. W. 556; Marshall v. Hall (Mo. App.), 200 S. W. 770.]

Cases of this character quite commonly present a state of facts where the husband, in contracting upon his own responsibility for the erection of a building upon land of which his wife was the owner, was undertaking the performance of his duty to provide a house for the home and joint occupancy of himself and his wife, and where the wife's participation in the matter was to be regarded as nothing more than a proper display of wifely interest in making suggestions about the work.

But on the other hand, if the facts in a particular case are such as to show that the wife dealt actively with the person furnishing the labor and material, and, as frequently happens, assisted in raising funds for the doing or completion of the work, then her conduct, even if not of a character to have bound her personally to pay for the labor and material going into the work, will at least be held sufficient to have transmitted to the person furnishing the labor and material the right to have a lien upon the premises. [Boeckeler Lumber Co. v. Wahlbrink, 191 Mo. App. 334, 177 S. W. 741, aff., 276 Mo. 662, 208 S. W. 840; Henry Evers Mfg. Co. v. Grant (Mo. App.), 284 S. W. 525.]

In the case at bar, plaintiff testified that he knew both Morris Stern and Ida Stern "very well," having done numerous repair or construction jobs for them on previous occasions; that with respect to the contract and work in question, Ida Stern had told him that whatever her husband did was "o. k." with her; that on "quite a few times" she had "wanted to know how the work was progressing and when we expected to get through;" and that she had personally selected the color of paint for the bathroom interiors and the special design of tile that was used in the installation of the bathroom floors. But most important of all was the fact that only three days after the contract was let and the first item of labor and material was furnished, she joined with her husband in executing a deed of trust upon the property to secure a loan from Thomas M. Sayman Investment Company, which loan was concededly made for the purpose of providing funds to be used in payment for the improvements.

It is true that in her own testimony, Ida Stern undertook to deny her personal connection with the work, but it suffices to say that her testimony was so contradictory in certain material respects as to induce the belief that the facts of the case were as plaintiff had testified regarding them.

If the case were one where a house had been built in which Ida Stern had expected to reside with her husband as their home, much of her solicitude for the progress of the work might perhaps be looked upon as mere wifely interest, not sufficient to be persuasive upon the question of her husband's agency for her and of her own active participation as owner in the doing of the work. However the work did not consist either of the building of a home in which she would reside upon its completion or of repairs to a home in which she had already resided, but, on the contrary, consisted purely of improvements to tenement property which she and her husband owned by the entirety, and which improvements were undoubtedly made to the then existing buildings for the purpose of enhancing the rental value of the property. This circumstance, considered along with the highly significant and admitted fact that she joined with her husband in giving a deed of trust upon the property in order to obtain funds for the making of the improvements, leads to the inevitable conclusion that she concurred with her husband in having the work done for their mutual use and benefit as owners so as to have entitled plaintiff and the other lien claimants to have had their liens against the property.

But even though the evidence was sufficient to warrant the fair inference of Morris Stern's agency for his wife, Ida Stern, so as to have entitled the three lien claimants to their liens against the property, it does not necessarily follow that by the same token Ida Stern became personally liable to plaintiff for the value of the labor and material going into the improvements.

The purpose of the mechanic's lien act is not to create a personal indebtedness not otherwise existing, but only to provide a lien under the conditions enumerated in the act; and where, as in the case at bar, an owner contracts through an agent, the agent may either be one whose agency is sufficient in its scope to enable him to bind the owner personally for the value of the labor and material furnished, or he may be a person with such limited authority as to be unable to bind his principal personally for the work, but who, at the same time, by the exercise of the limited authority conferred upon him, will transmit to the person furnishing the labor and material the right to a lien upon the owner's premises. [Ward v. Nolde, 259 Mo. 285, 168 S. W. 596; Burgwald v. Weippert, 49 Mo. 60; Henry Evers Mfg. Co. v. Grant, *supra*; O'Neil Lumber Co. v. Greffet, 154 Mo. App. 33, 133 S. W. 113.]

In the case at bar, not only did Ida Stern not contract personally with plaintiff for the work, but there is no evidence that her husband had authority to bind her personally, or that plaintiff ever intended to look to her personally for payment of his account for labor and material furnished. On the contrary, when the work was all done, plaintiff informed Morris Stern of the completion of the contract, and asked payment of the balance due from Morris Stern alone. Consequently, plaintiff now has no basis for sustaining his personal judgment against Ida Stern, and the court committed error in entering personal judgment against her.

We come finally to the question of priority as between the three mechanic's liens adjudged against the property and the lien of the deed of trust which had been placed against the property by Lorraine Realty and Investment Company, the former owner of the property, more than a year before the execution of the contract for the doing of the work.

Inasmuch as the improvements were made to and became integral parts of existing structures, the lien of the first deed of trust, which antedated the commencement of the work, should have priority over the subsequent mechanic's liens, unless it be, as the lower court found, that Thomas M. Sayman Investment Company, the owner and holder of such deed of trust, by reason of having arranged and provided funds for the making of the improvements, should be taken as having waived the priority of the lien of its deed of trust in favor of the liens of the mechanic's lien claimants.

The rule in such matters is that while the mortgagee does not waive the priority of his lien by merely consenting or failing to object to the improvements (Bovard v. Owen (Mo. App.), 30 S. W. (2d) 154), yet he may, by reason of inducing the furnishing of the labor and material, be precluded from asserting the priority of his mortgage over a mechanic's lien. [Compton v. Conrad, 203 Mo. App. 211, 209 S. W. 288; 40 C. J. 299.]

The admitted facts in the case at bar show clearly that Thomas M. Sayman Investment Company did far more than merely consent, or fail to object, to the making of the improvements. On the contrary, it not only provided the funds to be used in payment for the work, but indeed actively participated to the extent of writing the checks, and, in instances, making payments directly to the contractors themselves as the work progressed, for which payments it took and retained receipts in its files.

It is a significant fact that the work which was done did not consist of the making of ordinary repairs to the buildings so as to have merely preserved the security for the loan which was evidenced by such first deed of trust, but instead the work consisted of alterations and additions to the buildings which materially enhanced the value of the property over and above the original security which had previously existed.

It is obvious from the facts and circumstances as shown by defendants' own evidence that the matter of contracting with plaintiff for the improvements was handled by prearrangement between the Sterns and Thomas M. Sayman Investment Company for the benefit of their respective interests in the property; and with Thomas M. Sayman Investment Company having thus induced the furnishing of the labor and material, and having actively participated in the transaction by retaining the proceeds of the improvement loan which it thereafter paid out as the work progressed, it must follow, as the lower court found, that the mechanic's liens for the unpaid balance due for labor and material going into the improvements are to be held prior and superior to the lien of the existing first deed of trust.

It follows that as to appellant Ida Stern, the judgment of the circuit court should be reversed insofar as it constitutes a personal judgment against her in favor of respondent Phil Magidson, doing business as Magidson Construction Company, and that it should be affirmed as to appellant Louis Bell and appellants Mrs. Luella B. Sayman, Justin S. Brewer, and W. L. Hemingway, the last board of directors and trustees of Thomas M. Sayman Investment Company. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.

The joint motion of respondents Arthur J. Michel, doing business as South Side Terrazzo, Marble & Tile Company, and Phil Magidson, doing business as Magidson Construction Company, to substitute Ida Stern, Jess Stern, Harry Stern, and Melvin Stern, heirs of Morris Stern, deceased, as appellants in the place of Morris Stern, deceased, is overruled; the motion of respondent Cook Paint & Varnish Company, assignee of J. W. Miller, to affirm the judgment of the circuit court is overruled; and the judgment of the circuit court is reversed

as to appellant Ida Stern insofar as it constitutes a personal judgment against appellant Ida Stern in favor of respondent Phil Magidson, doing business as Magidson Construction Company, and affirmed as to appellant Louis Bell and appellants Mrs. Luella B. Sayman, Justin S. Brewer, and W. L. Hemingway, the last board of directors and trustees of Thomas M. Sayman Investment Company. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.