James BRYANT, Plaintiff-Appellant,

v.

BRYANT CONSTRUCTION COMPANY, Inc., Arvin T. Mueller and Iona E. Mueller, Defendants-Respondents.

No. 32715.

St. Louis Court of Appeals.

Missouri.

Jan. 16, 1968.

Motion for Rehearing or for Transfer to Supreme Court Denied Feb. 20, 1968.

Leyhe, Jacobsmeyer & Meyer, R. W. Jacobsmeyer, William H. Leyhe, III, Clayton, for plaintiff-appellant.

Ray B. Marglous, Clayton, for defendants-respondents.

TOWNSEND, Commissioner.

Action by sub-contractor to impose a mechanic's lien upon real estate owned by the defendants Mueller. From a judgment in favor of the Muellers in a jury-waived case, plaintiff appeals.

In his proceeding plaintiff brought this action against Bryant Construction Company, joined the Muellers as defendants, prayed that his account against the construction company be adjudged a mechanic's lien against the premises of the Muellers and that special execution issue against the Mueller premises if sufficient assets of the construction company cannot be found to satisfy the judgment against it. Bryant Construction Company defaulted and judgment was rendered against it for $952.21 plus interest at the same time that judgment was entered in favor of the Muellers.

Following Rule 73.01(d), V.A.M.R., this Court "review[s] the case upon both the law and the evidence as in suits of an equitable nature."

In the Spring of 1959 Mr. and Mrs. Mueller decided to build an addition to their home. Mrs. Mueller testified in substance as follows: The subject of a two-room addition to their house and the remodeling of the kitchen was discussed and agreed upon by husband and wife, blueprints were prepared and Mrs. Mueller approved them. The type of cabinets and the kind of stove to be installed in the addition were discussed with Mr. Mueller. The stove was of a type which she wanted. The placement of the cabinets and their colors were approved by her at the time the plans for the addition were drawn up.

Mrs. Mueller along with her husband executed the note and the deed of trust necessary for the procurement of a loan to finance the contemplated addition. In answer to an interrogatory asking whether or not the defendants Mueller entered into a contract with Bryant Construction Company for improvement of the property in question the Muellers answered Yes. However at the trial Mr. Mueller was permitted to state, over objection, that Mrs. Mueller did not sign the contract with the Bryant Construction Company.

According to the testimony of the plaintiff, James Leo Bryant, he entered into a contract with the Bryant Construction Company to furnish and install the cabinets for the intended addition. There was no precise description of the cabinets to be furnished, the choice presumably being left to the Muellers; this was apparently a matter of no concern to plaintiff since he was to furnish and install the cabinets on a cost plus basis. Plaintiff states that he called the Morgan-Wightman Company and procured them to visit the home of the Muellers and there measure the areas intended to receive the cabinets,—"* * * and they come out and measured for the cabinets and talked to them about what all they wanted in there * * *."

"Q. What did you instruct Morgan-Wightman to do, sir?

A. To go out and get the measurements on the job and to get together with the Muellers and see what type of cabinet was going in.

*     *     *     *     *     *

Q. And you don't know if they did or not?

A. Well, I got a sketch back. I don't know if we have it yet or not, but I'm sure we got a sketch back. They drawed a sketch just exactly of what it was supposed to be, as to the type of material and the type of cabinets that was supposed to go in there."

Defendant Arvin Mueller testified that no one other than one Simpson, an employee of Bryant Construction Company, came to his home to take the necessary measurements for the cabinet spaces and that after this had been done he (Mueller) went to the establishment of Morgan-Wightman with

Simpson and L. J. Bryant where they picked out the cabinets to be installed.

The only physical evidence of plaintiff's asserted contract with Bryant Construction Company is found in this attenuated form, introduced as plaintiff's exhibit 1:

"To Bryant Const. Co.
10557 Oak
Overland 14, Mo.

We agree to furnish and install cabinets for kitchen on job known as Mueller job located in St. Johns Mo.

June 20, 1959

[s] James L. Bryant
Acceptance of Agreement
[s] Bryant Const. Co
Leonard J. Bryant."

Plaintiff did no work on the premises in question owing to the fact that he became fully engaged thereafter in his work on another job and had no time to make the Mueller installation. Nevertheless the cabinets were delivered to the intended place of installation and the actual work of installation was thereafter at his request performed by employees of the Bryant Construction Company. Plaintiff states that under his contract with the Bryant Construction Company he was to be paid the cost to him of the cabinets actually supplied, plus ten percent for installation, ten percent for overhead and ten percent for his profit.

The plaintiff placed in evidence the various billings from Morgan-Wightman, each of which showed under the head of Routing Requested, or "Job REF", the address of the Muellers' home, 3612 Eminence, with the added notation, "Arvin T. Mueller, Owner". Each such billing was made to "J. B. Bryant", at plaintiff's home address. Plaintiff states that he purchased all such items from Morgan-Wightman.

Bryant Construction Company was (or is) a corporation in which plaintiff's brother, Leonard Joseph Bryant, was the leading light. Plaintiff testified that he and his brother had never been partners, that at the time of making the contract with Bryant Construction Company they had no other type of business or financial relationship, that they had never worked together as a "unit", that the last time he had worked with his brother was when he (plaintiff) was fifteen or sixteen years old, a period antedating the time of the trial by about twenty years, and that the contract for the cabinets was the only occasion upon which he had ever had a contract with his brother. When asked whether there had ever been any occasions when supplies had been charged to him but used by his brother or the latter's corporation, the witness answered "None", and then: Q. "Have you ever authorized any supplies or equipment to be charged to you, which, in fact, were used by your brother?" A. "No", and Q. "Now, you did know this, sir, that at Morgan-Wightman, your brother was unable to obtain credit; you knew that, didn't you?" A. "No". This line of questioning culminated in these questions and answers: Q. "Now, I am asking you specifically, if he [Leonard Joseph Bryant] ever asked you if he could bill through you, so that he could get these cabinets from Morgan-Wightman?" A. "No". Q. "And it is your testimony that that [use of plaintiff's name in order to buy material] did not happen, and that it did not happen with Morgan-Wightman, is that correct?" A. "No, it never happened with them."

In answer to interrogatories the defendants Mueller stated that the whole of a described list of items was furnished to them by Bryant Construction Company and that all were used and entered into the construction of the improvements to their real estate. The items so listed were the same as those alleged in plaintiff's petition to have been furnished to the home of the Muellers.

In the present action plaintiff sues for the principal sum of $1052.21, the total amount of the billings from Morgan-Wightman and the same as the amount of the

filed mechanics lien dated November 23, 1959. Plaintiff testified that he had been paid $100 by the Bryant Construction Company but could not recall the date—in any event he took the payment "right to" Morgan-Wightman. Otherwise there is no evidence of the payment of any sum by or to any of the persons named in this opinion.

Arvin Mueller testified also that he was present when plaintiff testified at the trial in the Magistrate Court. These questions and answers followed:

"Q. Did you have occasion during the course of his examination, either direct or cross, in the Magistrate Court, to hear his testimony? A. Yes.

Q. And did you hear any statements, or remember any statements made by Plaintiff Bryant concerning his relationship with the Bryant Construction Company, namely, his brother Bryant, and Plaintiff Bryant, and Morgan-Wightman Lumber Company? A. Yes.

Q. What, if anything, was said concerning that relationship?

A. That L. J. Bryant used James L. Bryant to get credit at Morgan-Wightman.

Q. Did he say for what purpose?

A. Yes, to get the cabinets for my home.

Q. Did he say for what reason he did this?

A. Yes, because he was denied credit at Morgan-Wightman.

Q. You mean, you are referring now to the brother Bryant?

A. Right, L. J."

The issue is whether, in the wording of the Mechanics' Lien statute, plaintiff James Leo Bryant was a person who "furnish[ed] any material * * * for any building, erection or improvements upon land * * under or by virtue of any contract with the owner or proprietor thereof, or his * * contractor." Section 429.010, RSMo 1959, V.A.M.S.

■ The initial question here is: Was there a contract between plaintiff and Bryant Construction Company, the contractor for defendants Mueller? While the agreement alleged by plaintiff called for him both to furnish the cabinets and to install them, he was, according to his testimony, released from the obligation to install by a recission of part of that contract. If his assertion of contract is accepted that release would still leave existent his contractual duty to furnish the cabinets.

There is no evidence that anyone other than the plaintiff actually furnished the materials constituting the cabinets. The exhibits both of the defendants and of the plaintiff show that the cabinets were delivered to the premises of defendants and that the cost of the same was charged by Morgan-Wightman to plaintiff.[1] There is no suggestion in the evidence that any person other than plaintiff became personally liable for the materials delivered. There is no evidence that plaintiff was a mere guarantor, that his obligation to Morgan-Wightman was merely collateral to that of some other obligor who was as to Morgan-Wightman the principal debtor; there was no such other principal debtor in the whole picture. We entertain no doubt

1. Insofar as the identity of Morgan-Wightman's book debtor has been questioned by defendants, that matter has been fully resolved by defendants' own exhibits A and C. In their exhibit A, the attorney for Morgan-Wightman addressed plaintiff, James L. Bryant, threatening the filing of a mechanic's lien against the premises of the Muellers *"wherein the property sold to you now is"*. This let-
ter was addressed to plaintiff at the same address as that shown on the various billings for the cabinet materials. In defendants' exhibit C the same attorney addressed the present attorney for defendants, enclosing "copies of our invoices with reference to the matter of James L. Bryant on the property located at 3612 Eminence Drive, St. Ann."

that as between himself and Morgan-Wightman the plaintiff was the unconditional debtor for the materials actually delivered and hence that the cabinet materials were furnished by plaintiff.

Were those materials furnished by plaintiff under a contract with Bryant Construction Company? We give due regard to the opportunity which the trial court had to judge the credibility of witnesses. We appreciate that the trial judge may be singularly unimpressed by testimony characterized by grammatical errors, rough diction and lack of memory. However, initial doubt as to the credibility of a witness must be weighed along with other relevant evidence, produced outside the area of the witness' testimony. We regard these facts as established by the evidence: Plaintiff procured Morgan-Wightman to sell the cabinet materials to him; those materials were invoiced to plaintiff, were intended by plaintiff to be used in improving the Mueller property, and were delivered to the Mueller property; plaintiff became the debtor for the materials so sold and delivered and he was the only debtor personally obligated to Morgan-Wightman for the purchase price of the same. The query naturally arises: What caused plaintiff so to conduct himself? We cannot indulge in any assumption that plaintiff intended to confer a gratuity upon the Muellers. Proceeding to other facets of the evidence, we know that plaintiff had no contractual relationship to the Muellers—he had never known them. We are informed by both parties that Bryant Construction Company was under contractual duty to the Muellers to make the whole of the contemplated improvements. The materials procured by plaintiff were knowingly built into the addition by Bryant Construction Company. Despite the fraternal relationship of plaintiff and the head of the Bryant Construction Company, human experience teaches that we cannot assume from that fact an intention on the part of plaintiff to make a donation to Bryant Construction Company. The only reasonable inference from all these established facts is that plaintiff had an agreement with Bryant Construction Company for furnishing the materials in question. The statutory requirement of furnishing material for a building under a contract with the owner or his contractor is satisfied.

■ Defendants Mueller maintain that the only possible function of the plaintiff in the transaction in question was that of a lender of credit and in the endeavor to show the relevance of that contention they cite Putnam v. Heathman, Mo.App., 367 S.W.2d 823. We think the attempted analogy fails. In the latter case the claimant entered in his lien statement an item designated as "advance labor" totalling $1900. At the trial it was shown that that sum had been advanced by the claimant for the purpose of enabling the recipient to pay the balance due under a contract for deed and was so used, the recipient taking title by warranty deed. In the subsequent mechanics lien proceeding the Court of Appeals held that the entry of $1900 was a non-lienable item and that its inclusion in the filed lien statement vitiated the whole of the statement, which included items that would otherwise be lienable. In the Putnam case that which was advanced was money; in the instant case that which was advanced was cabinet materials. The pertinent statute gives no lien for money loaned; it does give a lien for materials furnished. For the additional reasons that more fully appear in the immediately following paragraphs, we think that defendants' attempt to assimilate the lending of credit to the lending of money must fail.

Defendant Arvin Mueller testified that he heard plaintiff testify at the trial in the Magistrate Court, approximately six years before; that testimony, admitted as an admission against plaintiff's interest, has been previously recited. Assuming, without deciding, that Bryant Construction Company was in poor credit with Morgan-Wightman and had in fact been denied credit there, we fail to see how such facts are

controlling under the circumstances of this case. The use of the generalized term, "lender of credit", signifies nothing in and of itself. One may be a lender of credit in a variety of ways and until the manner in which credit has been loaned to another is shown with precision the proponent of the generality has established nothing. One may lend his credit by becoming the guarantor of the obligation of another; by contrast every sub-contractor lends his credit in some degree to his contractor—he procures labor and materials on his own credit and advances them to the contractor. That brings us to the specifics of the present situation. Defendants' argument seems to imply that there was an obligation of Bryant Construction Company for which plaintiff becomes responsible. Plaintiff utilized his credit with Morgan-Wightman and became indebted to the latter. In so doing his indebtedness was primary; it was not secondary to an obligation of Bryant Construction Company to Morgan-Wightman for there is no evidence of any such construction company obligation.

Assuming still the poor credit standing of Bryant Construction Company with Morgan-Wightman, we see nothing to be condemned in the format of the transaction adopted by the construction company. It matters not whether the sub-contractor was a brother of the head of the construction company or was a person bearing no family relationship to the latter. Moreover, it matters not whether the plaintiff utilized his credit standing to buy materials from a firm where the construction company was in poor credit or whether he bought on credit from any other wholesale firm able to supply the materials. If the whole transaction be viewed as a method or device for financing a contractor (no money being advanced) we detect nothing reprehensible therein so long as the sub-contractor furnishes the materials under a contract with his contractor.

At the conclusion of plaintiff's evidence, defence counsel moved to dismiss as to Mrs. Mueller on the ground that there was "no evidence at all presented by the Plaintiff that she in any way signed the contract, or that she is a party to the contract, or that it had anything to do with her at all." The court denied the motion "but I will take this matter with the case". In the motion for new trial plaintiff assigned as error the "finding that defendant Arvin T. Mueller did not act as agent for defendant Iona E. Mueller when he signed the contract with defendant Bryant Construction Co., Inc., for the improvement of the Mueller home."[2] Plaintiff pursues that subject in his brief; on appeal defendants ignore the issue.

Plaintiff pleaded that at all pertinent times "defendants Arvin T. Mueller and Iona E. Mueller, his wife, were and still are the owners in fee simple" of the described premises. There is no other averment in the pleadings—nor is there any evidence—as to the nature of the Muellers' tenancy. In the answer, Iona E. Mueller "states as a defense that she did not enter into a contract with the Bryant Construction Company, Inc., nor with James Bryant". For present purposes, we assume that the Muellers held title as tenants by the entireties.

It may be taken as uncontroverted that where title to real estate is held under a tenancy by the entireties neither husband nor wife has the power to create a mechanics lien by his or her own individual act. E. C. Robinson Lumber Co. v. Lowrey, Mo. App., 276 S.W.2d 636, 640. Here the written contract with Bryant Construction Company for the addition to the Muellers' home was signed by Mr. Mueller alone. Plaintiff contends that the other evidence in the record shows that Mr. Mueller in dealing with the contractor for the improvements acted as the agent of his wife and that the conclusion of the arrangements therefor constituted the concurrent acts of both husband and wife. If any such agency existed it was an implied agency, for there is

---

2. The trial court made no findings of fact and entered no conclusions of law.

no evidence that there was any expressed appointment of Mr. Mueller to act for his wife. In all probability the evidence would be insufficient for a finding that Mr. Mueller's agency extended so far as to give him power to bind his wife to a personal liability for the contract price of the improvements. Plaintiff's contention does not go that far, but plaintiff insists that the decided cases recognize the possibility of a limited agency of the husband to act for his wife, operating only insofar as the power to impose a lien upon their real estate is in question. A recognition of the distinction between these two types of agency is found in Magidson v. Stern, 235 Mo.App. 1039, 148 S.W.2d 144, 152:

"The purpose of the mechanic's lien act is not to create a personal indebtedness not otherwise existing, but only to provide a lien under the conditions enumerated in the act; and where, as in the case at bar, an owner contracts through an agent, the agent may either be one whose agency is sufficient in its scope to enable him to bind the owner personally for the value of the labor and material furnished, or he may be a person with such limited authority as to be unable to bind his principal personally for the work, but who, at the same time, by the exercise of the limited authority conferred upon him, will transmit to the person furnishing the labor and material the right to a lien upon the owner's premises."

■ There is obviously no rule of thumb by which to determine whether a wife has conferred upon her husband an implied authority to bind her interest to a mechanics lien by contracting for improvements to their real estate. Plainly some participation by the wife in the arrangements for the improvements or some connection with the contractor's performance is necessary before any implication of the husband's authority so to act for her can be deduced.

Such implication cannot be derived from simple quiescense. R. D. Kurtz, Inc. v. Field et al, 223 Mo.App. 270, 14 S.W.2d 9, 11; nor can it be found from anything so lacking in positivity as mere wifely interest in the husband's activities. Marshall v. Hall, Mo.App., 200 S.W. 770, 775.

■ Testimony of Mrs. Mueller as to her participation in the decision to improve their property was previously set out. Thus, she and her husband agreed to have the addition built, they discussed various details of the improvements to be made, plans were presented to them which Mrs. Mueller inspected and approved, at the time the plans were drawn up she picked the colors for the cabinets, there was no disagreement between her and her husband as to the type of work that was to be done. The most significant of Mrs. Mueller's acts in relation to the question of implied agency was her execution of the note and mortgage for the purpose of financing the proposed improvements. Of such conduct the Springfield Court of Appeals said in E. C. Robinson Lumber Co. v. Lowrey, 276 S.W. 2d 636, 640: "* * * the stipulated fact that Mrs. Lowrey executed such deed of trust tends to indicate her knowledge of and participation in the building project and is evidence of such character as has been considered significant and important in other cases." [3] First discussing the lack of implied agency in the husband where the wife takes only a "wifely interest" in a proposed improvement, the Kansas City Court of Appeals stated: "The rule is different if the wife gives a deed of trust on her property to raise means to be used by the husband in making the improvement." Bovard v. Owen, Mo.App., 30 S.W.2d 154, 156. And in Boeckeler Lumber Co. v. Wahlbrink, 199 Mo.App. 334, 177 S.W. 741, this Court found sufficient evidence of the husband's implied authority in the wife's execution of such a deed of trust, although there was no

---

3. In the E. C. Robinson Lumber Company case the note and deed of trust were tendered to the materialman in settlement of his account.

participation by the wife in setting the details of the construction project.[4]

We think that the evidence shows such an intimate personal relationship of Mrs. Mueller to the decision to procure the improvements to the property as to justify the conclusion that when Mr. Mueller entered into the construction contract with Bryant Construction Company he did so not only in his own interest but in the interest of Mrs. Mueller with her consent and authority. Accordingly it is held that Mr. Mueller had the implied authority to subject her interest to the imposition of a mechanics lien through the instrumentality of such construction contract. The contract of plaintiff with Bryant Construction Company was a contract with her contractor within the meaning of the Mechanics Lien statute. It is found that plaintiff has a statutory mechanic's lien upon the described real estate of the defendants Mueller, as of April 27, 1966, in the amount of $1390.20 and costs.

The judgment against Bryant Construction Company stands. The judgment in favor of the defendants Mueller is reversed and the cause is remanded to the Circuit Court of St. Louis County with directions, if property of Bryant Construction Company sufficient to satisfy the judgment against it in the amount of One Thousand Three Hundred Ninety and 20/100 Dollars, as of April 27, 1966, and costs, cannot be found, to cause special execution to issue against the following described real estate situated in St. Louis County, namely, Lot 4 of Northridge Subdivision according to the plat thereof recorded in Plat Book 35, page 72, of the St. Louis County Records, known and numbered as 3612 Eminence, in an amount sufficient to satisfy the judgment against Bryant Construction Company.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court.

Accordingly, the judgment in favor of the defendants Mueller is reversed and the cause is remanded to the Circuit Court of St. Louis County with directions, if property of Bryant Construction Company sufficient to satisfy the judgment against it in the amount of One Thousand Three Hundred Ninety and 20/100 Dollars, as of April 27, 1966, and costs, cannot be found, to cause special execution to issue against the following described real estate situated in St. Louis County, namely, Lot 4 of Northridge Subdivision according to the plat thereof recorded in Plat Book 35, page 72, of the St. Louis County Records, known and numbered as 3612 Eminence, in an amount sufficient to satisfy the judgment against Bryant Construction Company

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.

4. Affirmed, 276 Mo. 662, 208 S.W. 840.