**E. R. KAUFMANN, Respondent,**

v.

**John KRAHLING and Rose Krahling, his wife, Appellants.**

**No. 35444.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Jan. 7, 1975.

Motion for Rehearing or to Withdraw Opinion to Modify Judgment and Motion to Dismiss Appeal Denied Feb. 11, 1975.

Shepherd & Weenick, Charles M. M. Shepherd, Clayton, for respondent.

Edwin Rader, Clayton, for appellants.

CLEMENS, Judge.

Defendants John and Rose Krahling appeal from a monetary judgment against

them and a lien impressed upon their property. We hold the husband alone contracted with plaintiff, whose claim against the defendants' estate by the entirety is not lienable.

Plaintiff Eugene Kaufmann sued for $4,401.17 and a mechanic's lien. He pleaded (1) he had relied upon his right to a lien in remodeling Mr. and Mrs. Krahling's home; (2) defendants owed him $4,401.17 which they refused to pay; (3) the property was subject to a Deed of Trust executed by both defendants; (4) plaintiff had filed a "true and just account."

The Krahlings answered, *inter alia*, they owned the property by the entirety, but only John Krahling had promised to pay for remodeling. John Krahling alone further counterclaimed for damages against Kaufmann.

The crucial issues are Mrs. Krahling's liability on the contract and the lienability of the defendants' estate by the entirety.

■ The essential characteristic of the tenancy by the entirety has always been and still is the idea that each tenant owns the whole estate but no divisible part. Schwind v. O'Halloran, 346 Mo. 486, 142 S.W.2d 55 [2] (1940). With the advent of separate property laws and the disappearance of the common law fiction of spousal oneness, most states, including Missouri, modified the function and operation of the tenancy. Missouri law protects a surviving spouse against the other's improvident debts, and it immunizes the estate from liens imposed by one spouse's creditors. Magidson. v. Stern, 235 Mo.App. 1039, 148 S.W.2d 144 [4] (1941). Neither spouse has exclusive management power; neither may encumber or adversely affect the estate without the other's assent. Niehaus v. Mitchell, 417 S.W.2d 509 [4] (Mo.App. 1967). Neither spouse can act alone to convey the other's property interest. Austin and Bass Builders, Inc. v. Lewis, 359 S.W.2d 711 [2, 8] (Mo.1962). No lien may arise from one spouse's pledge of entirety property as security for a loan. Bank of Jasper v. Langford, 459 S.W.2d 97 [2, 6] (Mo.App.1970).

■ A creditor who contracts with a married person is charged with constructive knowledge that the party with whom he contracts may hold property by the entirety. Freeman Contracting Co. v. Lefferdink, 419 S.W.2d 266 [2–5] (Mo.App. 1967). A wife's interest is not lienable simply because she knows of or acquiesces in construction work, evidences interest in it, compliments it, or even makes suggestions as it proceeds. None of these activities alone permits the inference she has jointly assumed the husband's debts. Robinson Lumber Co. v. Lowery, 276 S.W.2d 636 [5] (Mo.App.1955), Wilson v. Fower, 236 Mo.App. 532, 155 S.W.2d 502 [6] (1941). Nor does the wife's reception of benefits from construction upon entirety property necessarily render her interest lienable, since a husband has a right in his own behalf to improve entirety property. Badger Lumber and Coal Co. v. Pugsley, 227 Mo.App. 1203, 61 S.W.2d 425 [10] (1933).

■ Perhaps due to potential hardship to creditors of couples holding entirety property, Missouri courts will impress a wife's interest with a lien if her activity rises to the level of joint participation. The theory most used to justify such a lien is that of implied agency. A wife may be responsible for those acts of her husband/agent which are intended for her benefit or which she ratifies by her behavior. (But see Badger Lumber and Coal Co. v. Pugsley, *supra*.) A wife's level of activity may bind her personally for her husband/agent's debts or may render her property interest lienable. Robinson Lumber Co. v. Lowery, *supra*, [6]. Unlike theories of "ratification" and "estoppel," the theory of "implied agency" need not be pleaded; it may be proved by such evidence as permits a logical inference of agency. Robinson Lumber Co. v. Lowery, *supra* [8–13], Rimer v. Hubbert, 439 S.W. 2d 5 [4] (Mo.App.1969).

Plaintiff Kaufmann proceeded upon the "implied agency" theory. However, the evidence does not support an inference that John Krahling was his wife's agent. Kaufmann knew Krahling was married; he had constructive knowledge of the state of the Krahlings' title when Mr. Krahling alone signed two contracts as well as all documents and checks in payment for the work. Mr. Krahling never held himself out as his wife's agent; he directed the details of construction himself. Dierks and Sons Lumber Co. v. Morris, 404 S.W.2d 229 [2] (Mo.App.1966). In their answer to plaintiff's petition, defendants specifically denied Mrs. Krahling's participation in the remodeling and in signing the contracts: ". . . defendants deny that both defendants were in the process of remodeling . . . and state that . . . John Krahling alone contracted with the plaintiff." The evidence supported defendants' denial. And only John Krahling counterclaimed for damages. Mrs. Krahling's "participation" in the construction work was closer to non-participation. Plaintiff did not show she had an "intimate personal relationship" with the details of the project. Bryant v. Bryant Construction Co., 425 S.W.2d 236 [4, 5] (Mo. App.1968). Nor did he adduce evidence which was strong and persuasive that the act allegedly subjecting the land to the lien was the joint act of both the tenants by the entireties. Robinson Lumber Co. v. Lowery, *supra* [4].

The wife's activity in two very distinguishable cases did give rise to the inference of agency. In Freeman Contracting Co. v. Lefferdink, *supra*, the husband alone, as here, signed the contract. But unlike the present case, the wife joined her husband in counterclaiming against the contractor for damages. Since she considered herself equally entitled to damages for the contractor's acts, the court held she was equally liable on the contractor's claim against her and her husband. In the present case, the husband alone has counterclaimed for damages.

In Bryant v. Bryant Construction Co., *supra,* the couple discussed details of construction and the wife actively approved plans, chose colors, signed notes to finance the work, and joined in the counterclaim for damages. In contrast, Mrs. Krahling and her husband did not discuss details: "Q: (to Mrs. Krahling) How did you decide how many rooms to build? A: We talked together many times in the last few years before we bought the house, if we buy a house, how many rooms it should be . . . But we did not discuss particular on this house. We discussed all over in general if we buy a house how many rooms we should have and what should be . . ." Mrs. Krahling seemed confused and ill-informed about details and construction plans: "Q: (to Mr. Krahling) Was your wife present when the first contractor came by your home? A: She was in the house. She was not present in the room. . . . Q: (to Mrs. Krahling) Any kind of work done on the house after you moved in? A: I think so. There was something in—you know, if a wall, roof was—, rain gutter come down on the old building and we just look at it— . . . Q: Did Mr. Kaufmann do any painting after you moved in? A: Painting? I'm sorry, I don't remember if he painted. Q: Didn't he paint the living room ceiling? A: Ceiling? Living room ceiling? I'm not sure. Maybe. I think so. But I am not sure."

As was already noted, Mrs. Krahling did not sign notes to finance the work or join in the counterclaim, and she took pains to explain she never bought anything: "Q: Did you select the colors in the bedroom? A: Yes. Q: Did John have those colors put in the way you wanted them? A: I don't understand the question. Q: All right . . . You selected it, then John had it done, is that right? A: He bought it. That is meaning this, he bought."

As an example of Mrs. Krahling's joint participation, plaintiff asked her whether she helped her husband engage an architect. After some confusion, she answered,

"I think so." Her confusion was understandable since the record shows Mr. Krahling alone located a salesman, who in turn found an architect. Mr. Krahling alone talked to the salesman and told him how many rooms he wanted. The salesman supposedly told the architect, who then mailed Mr. Krahling alone the plans, for which Mr. Krahling alone paid by check. Neither Mr. or Mrs. Krahling ever met with the architect. The record does not disclose whether she ever saw him, and Mr. Krahling saw him only after the house was remodeled.

In his closing argument, plaintiff's counsel said: ". . . John got his architect out of the TV guide. Never saw him. We don't even know if the architect went to this property. Judging by the way the plans worked out I would expect that he didn't. But that is not Gene's [plaintiff's] fault. That's John's [Krahling's] problem." The phrasing here is significant, since plaintiff's counsel has alleged Mrs. Krahling's joint participation in engaging the architect. Apparently, he did not consider the transaction to be her "problem" as well as John's.

One more case bears discussion, since it is more closely akin to the present case. In Dierks and Sons Lumber Co. v. Morris, 404 S.W.2d 229 [6, 7] (Mo.App.1966), the court held entirety property could not be impressed with a lien on a theory of the husband's implied agency. The husband alone contracted to buy land and took a deed to it in the entirety. The wife did not participate in the transaction. All records in connection with the plaintiff's delivery of materials were in the husband's name. The wife cosigned notes to finance the construction. The court held her signatures did not support an inference of agency; she knew nothing of the details of

these transactions. The court noted that even had she known all the details, the husband had not professed to be her agent and had not treated her as a party in interest.

In the present case, Mrs. Krahling never signed any documents. The record supports no inference she ever promised to pay Kaufmann or anyone else. John wrote all the checks and supervised all the construction details.

We hold the plaintiff has failed to show John and Rose Krahling contracted jointly to pay plaintiff or that Rose Krahling expressly or impliedly made John Krahling her agent to contract with plaintiff. It follows that plaintiff may neither recover monetary damages from defendant Rose Krahling nor have a lien on defendants' entirety property.

Since this holding leaves a monetary judgment against John Krahling, we have considered his further objections and find the denial of his motion for mistrial was within the trial court's discretion. We further find the plaintiff's lien waiver did not affect the amount of John Krahling's debt.

The judgment for damages and a mechanic's lien is reversed and the cause remanded to the trial court with directions to enter a new judgment denying a mechanic's lien and awarding plaintiff a judgment against defendant John Krahling alone for $3,200 plus interest and costs accruing to the time of judgment; and assessing later costs, including those of this appeal, to plaintiff.

Reversed and remanded.

DOWD, C. J., and WEIER and RENDLEN, JJ., concur.