### KENNY'S TILE & FLOOR COVERING, INC., Appellant,

v.

### Thomas C. CURRY, et al., Defendant,

### North American Savings, Assoc. & Warren Slagle, Respondents,

and

### Williams Enterprises, Appellant.

### Nos. WD 35052–WD 35280.

Missouri Court of Appeals,
Western District.

Oct. 9, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Nov. 27, 1984.

Dennis E. Dibler, Kansas City, for appellant Kenny's Tile & Floor Covering.

Marion W. O'Neill, Kansas City, for appellant Williams Enterprises.

Warren E. Slagle, Kansas City, for respondents North American Sav., Assoc. and Warren Slagle.

Before TURNAGE, C.J., and MANFORD and LOWENSTEIN, JJ.

MANFORD, Judge.

This is a civil action seeking the declaration of validity of mechanic's liens upon real property. The trial court denied the liens but entered personal judgment against one of the respondents. The judgment is affirmed in part and reversed in part.

A brief description of the origin of this action, as well as a brief explanation of the procedural development, is necessary to clarify the positions and claims of the parties.

Appellant, Kenny's Tile and Floor Covering, Inc. (hereinafter Kenny's) filed its petition seeking the declaration of a mechanic's lien and an order designating the lien superior to any and all other claims. Kenny's petition named seven defendants, who were: Thomas C. Curry and Maureen Curry (hereinafter Curry), North American Savings Association (hereinafter North American), Warren Slagle, trustee (hereinafter Slagle), Gary Hale (hereinafter Hale), Williams Enterprises, Inc. (hereinafter Williams), and Allied Mechanical, Inc. (herein-

after Allied). Defendants Curry were named in their capacity as owners of the subject property and as parties to a contract, for goods and services, with Kenny's. Slagle was named in his capacity as trustee under a deed of trust on said property. North American was named as a defendant in its capacity as owner of said property by virtue of a foreclosure sale upon said property. Williams was named in its capacity as another provider of goods and services.

Williams answered and filed a counterclaim against Kenny's and a cross-claim against the Currys, Slagle, and North American. By its cross-claim, Williams sought the declaration of a lien upon the property and the designation of superiority of its lien.

Prior to trial, a dismissal was entered regarding Allied and Hale. The case was tried before the court without a jury between Kenny's, Williams, North American, and Slagle.

 It is noted before setting forth the pertinent facts that this cause was tried to the court without a jury. The review of such proceedings is made pursuant to Rule 73.01 as construed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). In addition, this court, upon review, is authorized to enter the judgment which the trial court should have entered under the evidence and the law. Rule 73.01.

The record discloses the following pertinent facts.

On June 27, 1978, the Currys took title to two adjoining lots located in the Oak Tree Subdivision in Lee's Summit, Jackson County, Missouri. The lots were numbered Lot 165 and Lot 166. The Currys resided in the City of Raymore, Cass County, Missouri.

The obvious purpose of the purchase of the two lots was to construct single family dwellings on each for the further purpose of sale of developed properties. Such a dwelling was built on Lot 166 and was sold. On August 14, 1980, Thomas Curry applied for a loan with North American for the purpose of constructing a dwelling upon Lot 165. The purpose again being the construction and sale to a prospective purchaser. Both Thomas and Maureen Curry, in processing the construction loan, executed their promissory note and a deed of trust to the favor of North American, in the sum of $70,000.00. This loan transaction also paid off and released an existing note and deed of trust on Lot 165.

Construction upon Lot 165 commenced. Each month, Thomas Curry submitted "draw requests" to North American requesting various sums of money out of the "construction loan" to pay subcontractors who furnished goods and services in the construction of the dwelling. In turn, checks were written by Thomas Curry, and these checks, along with the "draw requests" were submitted to North American. After review of the checks and "draw requests", North American would charge the Currys' note for these costs. North American would then issue its check to cover the check issued by Thomas Curry. In mid-April, 1981, the Currys were without funds and construction was not complete.

 The record further reveals that although the Currys were without funds to complete construction, providers of goods and services were hired. During trial, Kenny's and Williams offered evidence that North American assured them of payment. North American and Slagle objected to such testimony because neither Kenny's nor Williams sought any money recovery against North American or Slagle. The objection was properly sustained.

Kenny's, as the record reveals, supplied and installed carpeting, tile, and wallpaper. Williams, as the record reveals, provided labor and materials for the landscaping. There was no dispute as to the amount for labor and materials or that the cost of same was reasonable. Both Kenny's and Williams filed mechanic's liens, and the validity of both is challenged by North American and Slagle.

Kenny's claim is for $4,394.78. The Williams' claim totals $1,489.92. Kenny's filed its lien on September 30, 1981. Subse-

quently, but prior to commencement of these proceedings, Slagle, as trustee, conducted a foreclosure sale. The sale was on October 19, 1981, North American bid the property, and a trustee's deed was executed conveying the property to North American. Williams filed its lien on November 4, 1981.

Thomas Curry then filed an action in bankruptcy. He was not joined in the bankruptcy proceedings by his wife, Maureen Curry. Both Currys defaulted in these proceedings, although Thomas Curry did appear as a witness. Trial to the court was conducted on May 31, 1983. The trial court held that Kenny's and Williams were entitled to a personal judgment as to Thomas Curry, but not Maureen Curry. The trial court further denied the claims of Kenny's and Williams as to their liens. This appeal followed.

Both Kenny's and Williams appealed. The cases, by order of this court, were consolidated. Between them, appellants present the following points, as summarized: The trial court erred (1) by failing to find that Thomas Curry was the agent of Maureen Curry, as the evidence established an implied agency and thus the judgment is against the weight of the evidence, (2) by excluding evidence that North American would pay for the goods and services because that evidences an agency between Thomas and Maureen Curry, (3) by failing to enter a personal judgment as against Maureen Curry because the evidence supported a judgment against her and (4) for failing to impress a lien against the subject property because the evidence established the existence of valid liens.

■ Before addressing the above points, two other matters raised are taken up and addressed. Respondents charge that Kenny's brief fails to comply with Rule 84.04. This contention by respondents is, after review by this court, found to be without merit. Secondly, appellant Williams charges that the trial court erred in failing to assess attorney's fees against North American for the latter's opposition to the production of documents during discovery under Rule 61.01(d). It is Williams' contention that the award of such attorney's fees is mandatory under the rule. The rule, however, and the interpretation of it provides that such matters are within the discretion of the trial court and rulings thereon will not be disturbed absent a showing of an abuse of that discretion. Williams' contention that the trial court erred in not applying sanctions and ordering an award of attorney's fees is meritless because there is no showing of an abuse of discretion. See *Great Western Trading v. Mercantile Trust Co.*, 661 S.W.2d 40, 43 (Mo.App.1983) and *Foster v. Kohm*, 661 S.W.2d 628, 631 (Mo.App.1983).

Both Kenny's and Williams charge that the trial court erred in failing to find that Thomas Curry was the agent for his wife Maureen Curry [point (1) above]. In addition, both appellants charge that the trial court erred in not entering a personal judgment against Maureen Curry [point (3) above]. These points (1) and (3) are taken up, considered, and disposed of conjunctively.

Both Kenny's and Williams contend that the evidence supports a finding of implied agency between Thomas and Maureen Curry. As noted above, the subject property and the construction of a dwelling thereon was acquired and undertaken for the express purpose of a resale to a prospective purchaser. The property and dwelling were never contemplated as a residence of the Currys.

■ In determining if there existed an implied agency, our courts review the evidence to determine if the wife's activity amounted to joint participation. The parties herein, of course, strongly disagree over the existence of an agency by implication. The record reveals that the Currys previously worked together on such projects. In addition, although Thomas Curry alone signed the loan application, the record reveals that Maureen Curry, along with her husband Thomas, signed the promissory note and deed of trust for the purpose of securing a construction loan from North American. Other evidence re-

vealed that Kenny's maintained an account in both Thomas and Maureen Curry's name. The record also reveals that Thomas and Maureen Curry jointly took title to Lots 165 and 166 by warranty deed in June, 1978.

It is now elementary in our law that property held by tenancy by the entirety between a husband and wife is an estate whereby each tenant owns a one-half indivisible portion of the whole estate and neither spouse has any exclusive management power or authority. *Kaufmann v. Krahling*, 519 S.W.2d 29, 31 (Mo.App.1975). No lien can arise against the property from the pledge of one spouse, nor may either spouse encumber or adversely affect the estate without the other's assent. Thus, a wife's interest in the property is not subject to a lien where she merely knows of or acquiesces in certain improvements made upon the property, where she merely shows an interest in the project, or where she makes suggestions as the work proceeds. *Bryant v. Bryant Construction Co.*, 425 S.W.2d 236, 242 (Mo.App.1968). The mere reception of benefits by the wife or her mere wifely interest in the improvements does not render her interest in the estate subject to a lien. *Bryant, supra.*

However, our courts have recognized potential hardships to creditors and in a case where the evidence reveals joint participation by a wife, the interest of the wife will be subject to a lien claim. *Kaufman, supra.* The theory applied to justify a lien is implied agency.

In *Bryant*, the evidence revealed that the husband and wife discussed the details of and agreed to an addition to their property. Further, the wife inspected and approved the plans and selected colors for cabinets. None of these factors are revealed herein. However, the court in *Bryant* went further and declared that the most significant act by the wife in relation to the issue of implied agency was her execution of the note and mortgage for the purpose of financing the improvements. These latter actions by the wife, considered the most significant, are in fact present in the instant case. The court in *Bryant* relied upon *E.C. Robinson Lumber Co. v. Lowrey*, 276 S.W.2d 636 (Mo.App.1955), which held the fact that a wife executed a deed of trust tends to indicate her knowledge of and participation in the project. Such evidence has been considered significant in other cases. See *Bovard v. Owen*, 30 S.W.2d 154, 156 (Mo.App.1930) and *Boeckeler Lumber Co. v. Wahlbrink*, 191 Mo.App. 334, 177 S.W. 741 (1915). For a case factually similar to the instant case, see *Poore v. International Paper Co.*, 455 S.W.2d 13, 20 (Mo.App.1970).

The evidence herein was sufficient to establish an implied agency between Thomas and Maureen Curry within *Bryant, Robinson, Bovard, Boeckeler,* and *Poore, supra.* The trial court erred in finding that there was no agency relationship between Thomas and Maureen Curry. The trial court further erred in failing to enter a personal judgment against Maureen Curry to the favor of Both Kenny and Williams for the amount claimed by both parties. The portion of the judgment which entered judgment in favor of Maureen Curry and against Kenny and Williams is reversed. The judgment is modified to show a personal judgment against Maureen Curry for the total sum of $5,884.70.

The finding of an implied agency between Thomas Curry and Maureen Curry and entry of a personal judgment against Maureen Curry gives rise to the following questions:

Question 1—Does the entry of a personal judgment against Maureen Curry render her and Thomas Curry jointly liable?

Question 2—Does the entry of a personal judgment against Maureen Curry thus render the claimed liens of Kenny's and Williams valid, and thus impress the subject property with those liens? Incidentally, the second question, by its nature, reaches appellants' point (4) above, and in addressing and answering question 2, point (4) is addressed and ruled.

The answer to question 1 is no. This answer is not reached because the evidence fails to show that Thomas Curry in fact incurred the liability and was in default against the claims of appellants, but rather, because the trial court erred in its entry of a personal judgment against Thomas Curry.

The record plainly reveals that Thomas Curry initiated proceedings in bankruptcy. He received a discharge in bankruptcy. There is no evidence upon the record herein to show that either Kenny's or Williams were listed in the bankruptcy proceedings. The evidence, however, does support a finding that both Kenny's and Williams had actual notice of those bankruptcy proceedings.

The present action, while appellants contend it was an action to *perfect their liens,* was nonetheless an action seeking a personal judgment against both Thomas Curry and Maureen Curry to *enforce* the claimed liens. As noted, Thomas Curry filed an action in bankruptcy. The present action, as it related to Thomas Curry, was stayed pursuant to § 362 of Title 11 of the Bankruptcy Code. Section 362 reads as follows:

§ 362 Automatic Stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement of continuations, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(b) The filing of a petition under section 301, 302, or 303 of this title does *not* operate as a stay—

(3) under subsection (a) of this section, of any act to *perfect* an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title; (emphasis added) [1]

A reading of Kenny's petition, along with Williams' cross-claim, reveals that neither seeks the mere perfection of their liens. Actions *to perfect* a lien are exempted from the stay section (§ 362) as set forth under § 362(b) above, *but* actions *to enforce* liens are not within the exception set forth in § 362(b) above. For a discussion of this issue, see *In Re Houts, supra,* which involved a lien claim under § 429.010, RSMo 1969. The court in *Houts* noted that § 362 does not stay proceedings *to perfect* a lien which is accomplished when the lien is filed, but the *Hout's* court went on to point out that any action *to enforce* a lien *does* violate the stay as mandated by § 362.

The court in *Houts* noted at 707:

[P]laintiff here did more than perfect its lien. It also attempted to enforce it by the filing of a suit while debtors were in bankruptcy ... *The filing of the action to enforce the lien violates the automatic stay,* prohibiting any act to enforce against any property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title. *Houts* at 707 (emphasis added)

It will be noted infra that neither Kenny's nor Williams had *perfected* their liens. At this juncture, it is important to point out further reasons why the court erred in entering a personal judgment against Thomas Curry.

Thomas Curry initiated his bankruptcy proceedings in December, 1981. In October, 1981, before the bankruptcy proceedings, the subject property was foreclosed

---

**1.** Neither Kenny's nor Williams sought in the bankruptcy proceeding any lifting of the stay mandated by § 362. In a situation where there exists a valid lien, relief may be obtained upon the request of a party of interest through § 362(d) of the Bankruptcy Code, which allows a court to terminate, annul, modify, or condition such stay. Failure to request relief under § 362(d), coupled with an attempt to enforce a lien, can result in the creditor being held in contempt. *In re Houts,* 23 B.R. 705 (Bkrtcy.W. D.Mo.1982).

on by sale, and the property title was transferred to North American. Thus, the subject property was not property within the bankrupt's (Thomas Curry's) estate. As noted, this action by Kenny's and Williams is an action to enforce the claimed liens. The property by foreclosure had passed from the Currys to North American, thus even more clearly designating the present case an action for recovery of a personal judgment against Thomas Curry.

As noted above, § 362 prohibits such actions. What about the bankruptcy discharge of Thomas Curry? Does that alter the situation? The answer is no because § 524 of the Bankruptcy Code addresses that question. That sections reads:

§ 524 Effect of discharge

(a) A discharge in a case under this title—

(1) voids *any judgment at any time obtained,* to the extent that such judgment is a determination of the *personal liability of the debtor* with respect to any debt discharged under section 727, 944, 1141, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor; or from property of the debtor, whether or not discharge of such debt is waived; ... (emphasis added)

In summary, the net effect of § 524, as it applied to appellants' claims against Thomas Curry, for and upon a personal judgment, is that the personal judgment entered by the trial court against Thomas Curry is void and the trial court erred in the entry of that portion of the judgment herein.

Appellants contend that Thomas Curry was "re-served" on August 31, 1982 following his discharge in bankruptcy (in July, 1982) and hence § 524 does not apply. Section 524, however, protects Thomas Curry against a personal judgment regardless of when that judgment was entered. 3

*Collier on Bankruptcy* § 524.01 (15th ed. 1984) declares:

Section 524(a)(1) provides that a discharge granted to a debtor under sections 727, 944, 1141, or 1328 of title 11 *voids any judgment obtained at any time* with respect to any debt discharged under the abovementioned sections of the Code to the extent that such a judgment is a determination of the personal liability of the debtor. (emphasis added)

*Collier* goes on to point out that § 524(a) at 524–528 insures that a discharge will be completely effective and will operate to protect a debtor from a subsequent suit in a state court by a creditor whose claim or debt had been discharged.

Thus, the effect of § 524 is that should a creditor initiate a suit in a state court after the debtor is discharged and a judgment is obtained against the debtor, such judgment is null and void. The intent and purpose of said section is to make it unnecessary for the debtor to do anything at all in the state court proceedings. Thus, the present judgment against Thomas Curry herein is void. The "reserving" of Thomas Curry was of no effect and in and of itself was a nullity.

In addition, it is noted that the automatic stay under § 362 does not apply to actions against property which is not part of the bankrupt's estate. As noted, due to the foreclosure sale, the subject property herein was not part of the bankrupt's (Thomas Curry's) estate. See *In re Fintel,* 10 B.R. 50 (Bkrtcy.D.Ore.1981). It has been noted, however, that a "personal judgment is the principal relief in a suit to enforce a mechanic's lien and the lien itself is but an incident of the principal relief; although a lien cannot exist without a personal judgment, a personal judgment may exist without a lien." *Esser v. Fowler,* 638 S.W.2d 327, 329 (Mo.App.1982). Therefore, in order to enforce the mechanic's liens herein, it was necessary to have a personal judgment against Thomas Curry which, as observed above, was not possible because of § 524.

It is urged by appellants that the rule in *Hupp v. Murphy Finance Co.*, 502 S.W.2d 345 (Mo.1973) would allow a lien even where a debt had been discharged. See also *Cork Plumbing Co., Inc. v. Martin Bloom Associates, Inc.*, 573 S.W.2d 947 (Mo.App.1978). However, *Hupp* rules that a discharge in bankruptcy does not invalidate any *valid* lien on property of the bankrupt in existence prior to the petition or the adjudication in bankruptcy. In addition, it is pointed out that the lien may be enforced by any appropriate proceedings *not involving a judgment in personam against the bankrupt*. As will be observed infra, the liens claimed by Kenny's and Williams were not valid.

Before reaching question no. 2 above, and hence the questions surrounding the alleged validity of appellants' liens, another matter must be considered at this juncture. A question arises as to whether the debts claimed by Kenny's and Williams were, as they relate to Thomas Curry, discharged in bankruptcy and thus within § 524(a).

Section 523(a)(3) of the Bankruptcy Code declares that debts which are neither scheduled nor listed are unaffected by the bankruptcy *unless* such creditor had notice or actual knowledge of the bankruptcy in such time to allow the creditor to timely file its claim. *Moore v. Kuehn*, 602 S.W.2d 713 (Mo.App.1980). The record herein fails to establish whether either Kenny's or Williams was a listed or scheduled creditor, however, the evidence does support a finding that both received notice or were made aware of the bankruptcy filing of Thomas Curry prior to Curry's discharge in bankruptcy. Interrogatories exchanged between the parties establishes that Kenny's learned of the bankruptcy in mid June, 1982, and Williams learned of the bankruptcy on or about February 24, 1982. The bankrupt, Thomas Curry, received his discharge on July 6, 1982. This information or knowledge was supplied by Slagle to attorneys for appellants. This was suffi-cient to charge Kenny's and Williams with notice by actual knowledge. *Moore v. Kuehn, supra.*[2]

▆ Under all the facts and circumstances herein, it must be concluded that both appellants had actual notice of the bankruptcy which in turn would have allowed for a timely filing of a claim in the bankruptcy proceeding. Thus, § 524 does apply against the appellant's claims seeking personal judgment against Thomas Curry.

The portion of the judgment herein ordering a personal judgment against Thomas Curry is, for the reasons set forth above, null and void. The trial court erred in the entry of that portion of the judgment, and that portion is hereby reversed and is held null and void.

Question (2) above reads, "Does the entry of a personal judgment against Maureen Curry thus render the claimed liens of Kenny's and Williams valid and thus impress the subject property with those liens?" As also noted above, this question includes appellants' point (4) which charged the trial court erred in failing to impose a lien upon the subject property.

There is no need to restate why a personal judgment validly lies against Maureen Curry. She was in default in these proceedings. In addition, the evidence supports a finding of implied agency rendering her personally liable. She was not a party to her husband's bankruptcy proceeding, nor did she seek like relief in any independent proceeding. She has no standing to assert her husband's defenses under the bankruptcy laws on her own behalf.

▆ The answer to question no. 2 is no for two simple reasons. In the first instance, the liens of both appellants are invalid because of the failure of both appellants to comply with the requirements of Missouri Mechanic's Lien Act. The claimed liens, as to the invalidity thereof, are discussed separately.

**2.** It is noted in the file before this court that there is a restraining order containing no proof of service directed to Kenny's Tile.

The Williams' lien, which descriptively is referred to as the "sod lien" arose out of a contract between Williams and the Currys in May, 1981. The purpose was for Williams to grade and sod the yard on Lot 165. Williams received no payment. Williams filed its lien within six months of the providing of goods and the completion of its services. Thus, Williams asserts its lien under § 429.560, RSMo 1978.

Before addressing the question of the validity of the lien, consideration must be given to a preliminary issue of whether or not the "sodding" of land comes within § 429.560, which is captioned, "Lien for ornamental plants or landscaping." This question was answered in *Rape v. Mid-Continent Building Co.*, 318 S.W.2d 519 (Mo.App.1958). In *Rape*, the plaintiff was employed to "sod the lots" which meant to furnish both sod and labor. The court ruled § 429.560 includes liens for sodding. A secondary aspect arises which involves the determination of what property may be impressed with a "sod lien" The particular statutory sections read as follows:

1. Any person who furnishes and plants trees, or other plants or who does any type of landscape planting shall have a lien on the trees, shrubs, bushes or other plans so planted and upon the land on which they are situated to the same extent and enforceable in the same manner as are mechanics liens, except that:
. . .

(2) Such lien shall be enforceable only against the property of the original purchaser of such plants unless the lien is filed against the property prior to the conveyance of such property to a third person.

■ In the instant case, the evidence reveals that Maureen and Thomas Curry purchased the sodding from Williams. However, prior to the filing of the lien by Williams (lien filed on November 4, 1981), the subject property was sold by foreclosure, and a deed transferring title to a successor owner (North American) occurred on October 19, 1981. Thus, under the above statute which mandates that the lien must be filed against the original purchaser prior to conveyance, Williams' claim for a lien must fail.

■ Williams' contention that North American should be construed as an original purchaser because it held the deed of trust does not persuade. The mere holding of a deed of trust does not change the holder's status of holder to that of owner. *R.L. Sweet Lumber Co. v. E.L. Lane, Inc.*, 513 S.W.2d 365 (Mo.1974). See also *City of St. Louis v. Koch*, 156 S.W.2d 1 (Mo.App. 1941).

As the record reveals, Williams did not have a validly filed lien for its landscaping claim and the trial court did not err in denying Williams' claim for a lien.

As noted above, Kenny's supplied carpeting, tile, and wallpaper, along with labor, upon the subject property. Kenny's and the Currys had previous dealings and Kenny's maintained an open account for the Currys. Kenny's supplied the requested materials and performed the work and payment was not made. On September 8, 1981, Kenny's commenced the process to establish a lien. Kenny's filed a Notice of Claim of Mechanic's Lien with the Office of Recorder in Jackson County, Missouri.

■ In determining the validity or lack validity of Kenny's claimed lien, it must first be determined whether Kenny's, in this instance, was an original contractor or a subcontractor. This determination is necessary because Chapter 429 prescribes different requirements for the two contractors. Kenny's asserts that it was a subcontractor and thus not required to comply with the statute requiring notice of a lien claim to the property owner. An original contractor under the mechanic's lien law is required to furnish such notice. § 429.012, RSMo 1978.

■ The evidence upon the record herein reveals that at the time of the Kenny's-Curry contract, the Currys were the *owners* of the subject property. Because of this fact, Kenny's was cast into the role of an original contractor. "One who makes a contract to perform labor or furnish ma-

terials with the then *owner* of the property is an original contractor." *Vasquez v. Village Center, Inc.*, 362 S.W.2d 588, 593 (Mo. 1962). Kenny's, by its petition, declared at the time of the contract with the Currys that the Currys were the owners of the property. An important factor is whether the contractor dealt with the then owner of the property and not the usual status of a contractor. A case factually similar which discusses this is *J.R. Meade Co. v. Forward Construction Co.*, 526 S.W.2d 21 (Mo.App.1975). As regards the dealings between a contractor and an owner, see *R.J. Stephens Drywall and Painting Co. v. Taylor-Morley-Simon, Inc.*, 628 S.W.2d 374 (Mo.App.1982). Because of the particular facts and circumstances herein, the conclusion must be reached that at the time of the Kenny's-Curry contract, the Currys were the *owners* of the property and Kenny's was an original contractor.

◼ Actions to establish and enforce a mechanic's lien are purely statutory in nature and the averments must plead and the evidence must prove the statutory elements before recovery is permitted. *Structo Corp. v. Leverage Investment Enterprises Ltd.*, 613 S.W.2d 197 (Mo.App. 1981). An essential element requiring both pleading and proof is notice to the owner. The burden of providing such notice and the proof thereof falls upon the party seeking the establishment and enforcement of the lien. *R.J. Stephens Drywall and Painting Co., supra.* The plain language of the statute, § 429.012, requires that notice be *provided* to the *owner*. If the written notice appears on the first invoice, it follows that proof of delivery of that invoice/notice is necessary.

◼ Section 429.012.1(d) provides that the notice can be "delivered with the first invoice ⋮..." In the instant case, neither the pleadings nor the evidence established that the required notice was *delivered* to Thomas Curry. What the record does reveal is Kenny's petition alleging the filing of a notice in the Recorder's Office. Secondly, Kenny's offered to the trial court a copy of its invoice containing the required

notice language of the statute. This invoice is addressed to Thomas Curry. However, Kenny's offered no proof that the invoice inclusive of the statutory notice was ever delivered to Thomas Curry. Without proof of the delivery of the required notice, Kenny's lien claim must fail.

◼ While this court is mindful of the fact that it has been held our mechanic's lien law should be liberally construed, and this court acknowledges Kenny's assertion of that principle, this court is also mindful that requirements of our statute are mandatory. Thus, when the statute clearly sets forth a requirement, then there is nothing to which any construction, even a liberal construction, can be applied. *R.J. Stephens Drywall and Painting Co., supra.*

Kenny's lien claim must fail due to a lack of proof of compliance with the mechanic's lien law, to wit, that notice to the *owners* (the Currys) was even delivered by Kenny's as an original contractor.

The trial court did not err in refusing to impress a lien against the subject property, as neither Kenny's nor Williams had a valid existing lien. That portion of the judgment denying said liens is affirmed. This particular ruling answers question no. 2 above and disposes of appellants' point (4) above.

There remains one final matter, and that is appellants' contention [point (2) above] that the trial court erred in excluding evidence that North American would pay for the goods and services, because that evidenced an agency between Thomas and Maureen Curry.

This court is somewhat at a loss relative to the relation of the refused evidence and the question of agency, but be that as it may, it is concluded that the trial court did not err in the exclusion of such evidence. In the first instance, because of other evidence upon the record, it has been determined that an implied agency between Thomas Curry and Maureen Curry did exist and the ruling by this court has corrected the error of the trial court in that regard. Secondly, and more importantly, the

trial court correctly excluded such evidence because neither by pleading nor under the evidence did either appellant seek any recovery against North American. The trial court did not err in sustaining the objection of North American to such evidence. There is no merit to appellants' point (2) and it is ruled against appellants.

In conclusion, it is the decision of this court that the portion of the judgment denying appellants' claim for a personal judgment against Maureen Curry is reversed and personal judgment against Maureen Curry is hereby entered in the sum of $5,884.70.

Further, the portion of the judgment directing a personal judgment against Thomas Curry is hereby set aside and that portion of the judgment is ruled null and void. Still further, the portion of the judgment denying mechanic's liens against the subject property is affirmed.

All concur.