In re NORTH PORT ASSOCIATES, INC., Debtor.

Peter D. KERTH, Trustee, Plaintiff,

v.

LAKE OZARK CONSTRUCTION, et al., Defendants.

Bankruptcy No. 93–46630–399.
Adversary No. 96–4349–399.

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

July 9, 1997.

David J. Harris, St. Louis, MO, for trustee.

Richard C. Downing, Little Rock, AR, for Hooper Services, Inc.

Rachel Wollitzer, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC.

Leonora S. Long, Office of United States Trustee, St. Louis, MO.

Steven Goldstein, Goldstein and Vouga, St. Louis, MO, for Debtor.

## MEMORANDUM OPINION AND ORDER, ORDER GRANTING SUMMARY JUDGEMENT IN FAVOR OF TRUSTEE AND AGAINST LAKE OZARK CONSTRUCTION INDUSTRIES, INC.

BARRY S. SCHERMER, Bankruptcy Judge.

### INTRODUCTION

The Chapter 11 trustee's motion for summary judgement challenges the validity of

mechanic's lien asserted against Debtor's real property. The Court concludes that the mechanic's liens asserted by Lake Ozark Construction Industries, Inc. against the Debtor's real estate fail as a matter of law.

## JURISDICTION

This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and Rule 9.01(B) of the Local Rules of the United States District Court for the Eastern District of Missouri. This is a core proceeding which the Court may hear and enter appropriate judgements pursuant to 28 U.S.C. § 157(b)(2)(K).

## STATEMENT OF FACTS[1]

1. North Port Associates, Inc. (the "Debtor") is a Missouri corporation incorporated on June 30, 1988 and administratively dissolved on June 10, 1993.

2. The plaintiff, Peter D. Kerth (the "Trustee") was approved as trustee of Debtor pursuant to 11 U.S.C. § 1104[2] by order dated September 8, 1995 and filed September 11, 1995.

3. Lake Ozark Construction Industries, Inc. ("LOCI") is a Missouri Corporation in good standing engaged in construction work in and around Miller County, Missouri. LOCI is generally engaged in the business of site development and infrastructure work.

4. Debtor owned approximately sixty (60) acres of property along Lake of the Ozarks, Miller County, Missouri (the "Property") and an additional 1,100 acres along the Osage River in Miller County, Missouri (the "Golf Course Property").

5. In 1988, Debtor began development of a residential resort community on the Property which would include condominiums, a marina office and retail (sometime referred to as the Lakeside Development/Project). Debtor began a development on the Golf Course Property including a golf course and clubhouse (sometimes referred to as the Riverside Development).

6. Debtor filed a petition under chapter 11 of the Bankruptcy Code on December 30, 1993.

7. On July 19, 1996, this Court signed an Order Authorizing Auction (the "Auction Order") which authorized the Trustee to sell at auction certain assets of the Debtor including real property, a boat dock and miscellaneous personal property.

8. An auction of the property was conducted on July 20, 1996. The successful bidders paid a deposit equal to 25% of the bid price. With the exception of the personal property, all sales were completed by September 30, 1996.

9. Robert W. Carron was Debtor's president from 1989 to late 1995.

10. North Port Construction, Inc. ("North Port Construction") is a corporation. Richard Robertson is the President and sole owner of North Port Construction. There is no common ownership between the Debtor and North Port Construction.

11. Robert Noel Kline is an officer of Everett Holding Company. LOCI is a wholly-owned subsidiary of Everett Holding Company.

*COMMENCEMENT OF WORK/CONTRACTS*

12. Beginning in December 1988, LOCI began performing construction work and providing supplies to the lakeside portion of the Project.

---

1. This Statement of Facts is compiled from a Joint Stipulations of Facts filled May 13, 1997 between the Trustee, Lake Ozark Construction, Industries, Inc. ("LOCI"), and Great Southern Bank. The facts particular to defendant LOCI were supplemented in a Statement of Undisputed Facts contained in Plaintiff's Motion for Summary Judgement and Suggestions in Support. However, many of the "undisputed" facts set out in Plaintiff's Motion were, in fact, disputed and/or amended by LOCI in its Suggestions in Opposition to Plaintiff's Motion. The facts in this Memorandum Opinion and Order shall be restated from these three (3) documents to the extent necessary to resolve the issues sub judice. This Statement of Facts should not be construed as a final and complete finding on all relevant facts between Trustee and LOCI.

2. The Bankruptcy Code is 11 U.S.C. §§ 101–1330. All future references are to title 11 unless otherwise indicated.

13. According to Robert Kline, LOCI's work, beginning in 1988, consisted first of clearing timber from a portion of the Property. Other work performed during 1989 through 1991 on the Property was in connection with condominium development.

14. Construction work and provision of supplies and was initially done pursuant to an open account with the Debtor.

15. After LOCI began work on the project in December 1988, the Debtor discovered that certain land necessary for the development was owned by LOCI. LOCI agreed to transfer the Property to Debtor at its cost and to reinvest the proceeds of that sale into the project in exchange for a commitment from the Debtor to retain LOCI as heavy contractor on all the development and infrastructure work for the Lakeside and Riverside projects that LOCI wanted to do.

16. LOCI and Debtor reduced this understanding to writing and entered into a written agreement dated November 8, 1989, designated the "Master Agreement." Paragraph 2 of the Master Agreement specifically provides:

*Project Site Preparation and Infrastructure Agreement.* As a condition to LOCI's transfer of the LOCI parcel, Northport hereby agrees that it will contract solely with LOCI, or affiliates of LOCI designated by LOCI for all site preparation and infrastructure work needed on the Project or any phase thereof, including but not limited to all excavation, grading, earth moving, road and parking lot construction and paving, supply of raw material and sand, rock, cement, supply of ready mix concrete and any other site preparation or infrastructure work which LOCI desires to handle; ... LOCI hereby agrees that all such contracts shall contain reasonable cost provisions, not excessive based on the type of service and prevailing community standard. Northport hereby agrees that it will not engage, and it will cause any other entity, owner or developer of the Project or any phase thereof not to engage, any contractor other than LOCI for the performance of the site preparation and infrastructure work on the Project

which LOCI has been granted pursuant to this Section 2.

17. At the time the Master Agreement was executed, specific plans for the Project had not been drawn.

18. LOCI specifically alleges that its contract(s) were with the Debtor. In the Original Mechanic's Lien and in the Supplemental Mechanics Lien (see paragraphs 21 and 27), LOCI asserts that it "began working upon the Northport at the Lake Project ... at the instance and request of Northport" (and) "claimant and Northport then entered into an agreement in November of 1989 providing for claimant to do work for Northport upon the Northport at the Lake Project."

19. LOCI's Exhibit A to both the Original Mechanic's Liens and the Supplemental Mechanic's Lien (see paragraphs 21 and 27) described its arrangement with the Debtor as follows:

Early on in the development Northport entered into an Agreement dated November 8, 1989 (the "Master Agreement"), with LOCI, under which Northport agreed that it would: contract solely with LOCI ... for all site preparation and infrastructure work needed on the Project or any phase thereof ...

... Pursuant to and in accordance with the provisions of the Master Agreement and implementing agreements, LOCI has performed work and labor and furnished materials on the Project. LOCI has performed further work and labor and has furnished materials as directed by Northport either directly or through its agents, including but no necessarily limited to Northport Construction, Inc.

20. LOCI initially submitted invoices to Debtor for work performed on the Lakeside Development. LOCI later submitted invoices for work on the property to North Port Construction. When North Port Construction would not pay the invoices submitted, Debtor executed a promissory note for the outstanding balance and assumed responsibility for payment of the invoices submitted to North Port Construction but not paid.

*THE ORIGINAL MECHANIC'S LIEN*

21. On August 23, 1991, LOCI filed a Statement of Mechanic's Lien (the "Original Mechanic's Lien") in the office of the Circuit Clerk of Miller County recorded at Book P, page 230 *et seq.* in the aggregate amount of $75,151.20, including interest.

22. LOCI continued to perform work on the Project, even after filing the Original Mechanic's Lien and its first lawsuit; specifically, beginning in July, 1991 and allegedly continuing through August 15, 1992, LOCI worked on the development.

23. The title work by Cliffside Title as of January 10, 1990 shows Debtor as owner of all of the property covered by the Original Mechanic's Lien.

24. LOCI filed suit to enforce the Original Mechanic's Lien through an action to foreclose on September 19, 1991. This case is styled *Lake Ozark Construction Industries, Inc. v. North Port Associates, Inc.* case no. CV591–155CC, in the Circuit court of Miller County, Missouri.

25. This case was appealed to the Missouri Court of Appeals. Western District, who issued an opinion on June 1, 1993.

26. On October 22, 1993, the Circuit Court of Miller County entered an Order and Judgement incorporating the mandate of the Court of Appeals.

*THE SUPPLEMENTAL MECHANIC'S LIEN*

27. On February 4, 1993, LOCI filed a First Supplemental Statement of Mechanic's Liens in the office of the Circuit Clerk of Miller County recorded at Book Q, page 227 (the "Supplemental Mechanic's Lien") in the principal amount of $86,849.54 plus simple interest in the amount of $12,883.42, for a total amount claimed of $99,732.96, plus simple interest at the statutory rate of 9% after November 30, 1992 against real properties in Miller Count, Missouri. LOCI alleges that the last day of work covered by the Supple-

mental Mechanic's Lien was August 15, 1992.[3]

28. The Supplemental Mechanic's Lien states: "The date of the furnishing of the first item of labor, equipment, material, supplies, services, machinery and tools by claimant was in December of 1988 and the date that the last time thereof was furnished and performed by Claimant was August 15, 1992."

29. LOCI filed a Petition on August 2, 1993 to foreclose on the Supplemental Mechanic's Lien in a case styled *Lake Ozark Construction Industries, Inc. v. North Port Associates, Inc. et al.,* case no. CV593–235CC, in the Circuit Court of Miller County, Missouri. The case is still pending and LOCI has requested that it be consolidated with the lawsuit to enforce the Original Mechanic's Lien.

*NOTICE TO OWNER*

30. In response to Great Southern Bank's[4] interrogatories, LOCI stated that it gave notice to the Debtor with each invoice and each delivery ticket, but no particular invoice ticket or delivery tickets are specified by date. In response to the Request for Production of Documents requesting copies of any Notice to Owner relied upon by LOCI, LOCI faxed to Trustee's counsel on May 8, 1997 a copy of two "Quarry Tickets" dated January 4 and 5 1989, and numbered 14–100026 and 14–100047, respectively. Neither ticket is signed by "customer" and the location of delivery is not stated.

*TRUSTEE'S BASIS FOR SUMMARY JUDGEMENT*

Trustee seeks to defeat the mechanic's liens asserted by LOCI. Trustee identifies and analyzes four independent (4) theories, each sufficient to defeat the lien as a matter of law:

(1) LOCI *did not plead* that it gave the statutory notice required by § 429.012 Mo. Rev.Stat. in either the lawsuit to enforce the

---

**3.** LOCI admits that it alleged this, but it now claims that the last day of work covered by the Supplemental Mechanic's Lien was *actually* August 14, 1992. *See* paragraph 30, page 5 of Defendant Lake Ozark Construction Industries'

Suggestions in Opposition to Plaintiff's Motion for Summary Judgement.

**4.** Great Southern Bank is a defendant in the present action and a consensual lienholder.

Original Mechanic's Lien or the lawsuit to enforce the Supplemental Mechanic's Lien;

(2) The statutory notice was not *given and delivered* as required by § 429.012 Mo.Rev. Stat. in either the lawsuit to enforce the Original Mechanic's Lien or the lawsuit to enforce the Supplemental Mechanic's Lien;

(3) The labor and material covered by the single mechanic's lien over multiple lots was not done under one contract; and

(4) The mechanic's lien, in its separate components, was untimely filed.

For the reasons discussed below, the Court concludes that the evidence establishes that LOCI did not plead nor did it give and deliver proper notice as required by § 429.012 Mo.Rev.Stat. Accordingly, LOCI's mechanic's liens fail as a matter of law. Because the determinations as to these issues are dispositive of the case, the Court need not examine issues (3) and (4) and expressly reserves judgement on these issues.

### DISCUSSION

#### I. Summary Judgement

Summary judgement is appropriate when "the pleading, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed.R.Bankr.P. 7056(c). Facts must be viewed in the light most favorable to the nonmoving party, who must be given the benefit of all reasonable inferences that may be made from the facts disclosed in the record. *Raschick v. Prudent Supply, Inc.*, 830 F.2d 1497, 1499 (8th Cir. 1987), *cert. denied*, 485 U.S. 935, 108 S.Ct. 1111, 99 L.Ed.2d 272 (1988); *Laws v. United*

---

5. *See* paragraphs 21–26, Statement of Facts.

6. *See* paragraphs 27–29, Statement of Facts.

7. The Statement of Mechanic's Lien was filed on August 23, 1991, and the lawsuit to enforce it was filed September 19, 1991. However, Trustee's Exhibit 1 is the Second Amended Petition to enforce the Original Mechanic's Lien filed in the Circuit Court of Miller County on September 30, 1991. In response to the lack of notice pleading argument, LOCI alleges that the First Amended

*Missouri Bank of Kansas City N.A.*, 188 B.R. 263 (W.D.Mo.1995).

A party seeking summary judgement bears the initial burden of demonstrating to the court that an essential element of the nonmoving party's case is lacking. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the nonmoving party to come forward with sufficient evidence to demonstrate that there is a factual controversy as to that element, or to explain why such evidence is currently not available. *Id.*; Fed.R.Civ.P. 56(e). If the nonmoving party fails to so respond, summary judgement, if appropriate, shall be entered against such party. *Id.* The nonmoving party must come forward with sufficient evidence to allow a reasonable jury to find in its favor. *Id.*

#### II. Pleading of Statutory Notice

■ Trustee argues that LOCI failed to plead the requisite statutory notice to the Debtor both in the lawsuit to enforce the Original Mechanic's Lien[5] and in the lawsuit to enforce the Supplemental Mechanic's Lien.[6] LOCI responds that its First Amended Petition in its lawsuit to enforce the first Original Mechanic's Lien[7] sufficiently pleads the notice required by § 429.012 Mo.Rev. Stat. in paragraph 90. The relevant portion of paragraph 90 of that First Amended Petition states:

On or about August 23, 1991, LOCI filed a Mechanic's Lien in the Office of the Miller County Circuit Clerk and ex-officio Recorder which was recorded in Book P at Page 230 in that office (the "Lakeside Mechanic's Lien"). Prior to filing the Lakeside Mechanic's Lien, LOCI gave more than ten days notice to NP Associates and Thompson *that it would file the lien ...*

---

Petition filed September 19, 1991 (LOCI Exhibit 4) contains the relevant pleading provision. Having decided that the First Amended Petition's paragraph 90 does not plead § 429.012 Mo.Rev. Stat. notice as a matter of law, the Court need not inquire whether any other pleadings satisfy such requirement since it is LOCI's burden to come forward with evidence sufficient to rebut the Trustee. *Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e).

(emphasis added). Similarly, LOCI points to a similar paragraph 24 in its Second Amended Petition in the lawsuit to enforce the Supplemental Mechanic's Lien which states:

> On or about August 23, 1991, LOCI filed a Mechanic's Lien in the Office of the Miller County Circuit Clerk and ex-officio Recorder which was recorded in Book P at Page 230 in that office (the "Original Lakeside Mechanic's Lien"). Though it was not required by law to do so, prior to filing the Original Lakeside Mechanic's Lien LOCI gave more than ten days notice to NP Associates and Thompson *that it would file the said lien.*

(emphasis added). LOCI contends that these paragraphs, although not specifically referencing § 429.012 Mo.Rev.Stat., satisfy its notice requirements. Trustee argues that the notice referred to in these paragraphs is not the § 429.012 notice but the 10 day advance notice of an intent to file a mechanic's lien for completed work and material required under § 429.100 Mo.Rev.Stat. The Court agrees with the Trustee.

■ "A mechanic's lien is a creature of statute and the party seeking its enforcement must plead and prove the statutory elements before a lien can be granted." *Financial Design Consultants, Inc. v. McCarver,* 712 S.W.2d 738, 740 (Mo.App.1986); *Kenny's Tile and Floor Covering, Inc. v. Curry,* 681 S.W.2d 461, 472 (Mo.App.1984). Section 429.012.1 provides as follows:

> Every original contractor, who shall do or perform any work or labor upon, or furnish any material ... for any building, erection or improvements upon land ... under or by virtue of any contract ... shall provide to the person with whom the contract is

made *or to the Owner If There Is No Contract,*[8] prior to receiving payment in any form of any kind from such person, (a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with the first invoice, a written notice ...

Subsection 2 provides: "Compliance with subsection 1 of this section shall be a condition precedent to the creation, existence or validity of any mechanic's lien in favor of such original contract." The written notice required by § 429.012 Mo.Rev.Stat. requires contractors to notify owners that failure to pay those supplying materials or service may result in the filing of a mechanic's lien.[9]

Pleading and proof of such notice "is a condition precedent to the creation, existence or validity of such lien." *McCarver,* 712 S.W.2d at 740; *Curry,* 681 S.W.2d at 472. The parties do not dispute the application of Missouri mechanic's lien law nor the effect of failing to prove a statutory element. The only issue in controversy with regard to pleading notice is whether LOCI sufficiently plead notice in its lawsuit to enforce the Original Mechanic's Lien and in the lawsuit to enforce the Supplemental Mechanic's Lien.

The Court concludes that LOCI did not plead notice in either lawsuit sufficient to satisfy the requirements of § 429.012 Mo. Rev.Stat. Paragraphs 90 and 24, reprinted above, refer to the ten (10) day advance notice of intent to file a mechanic's lien action required by § 429.100 Mo.Rev.Stat.[10] In any event, paragraphs 90 and 24 do not contain any notice to an owner that a failure to pay for materials and services could result in a

---

**8.** The portion in double underline was added by legislation in 1992.

**9.** The "boilerplate" disclosure language in § 429.012 states: NOTICE TO OWNER—FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE

WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR THE LABOR AND MATERIAL TWICE.

**10.** Section 429.100—Notification by subcontractors and other—provides: "Every person except the original contractor, who may wish to avail himself of the benefit of the provisions [of this Act], shall give ten days' notice before the filing of the lien, as herein required, to the owner, owners or agents, or either of them, that he holds a claim against the building or improvement, setting forth the amount and from whom the same is due."

mechanic's lien being filed. The excerpted paragraphs reprinted above are the only factual evidence LOCI offers to rebut the Trustee's arguments that it failed to give proper § 429.012 notice. Accordingly, the Court concludes that LOCI failed to plead notice as required by § 429.012 Mo.Rev.Stat. and its mechanic's lien actions fails as a matter of law.

### III. Actual Notice

■ Trustee further argues that insufficient evidence exists to prove the § 429.012 statutory notice was *timely* given and delivered to the Debtor.[11] LOCI contends it gave the statutorily required notice in a delivery ticket on January 4, 1989. This delivery ticket, it asserts, represented the first delivery of material to the project by LOCI and it was delivered to the Debtor. LOCI submits affidavits of Robert Kline and David Van-Hooser both of which state that the first delivery of materials by LOCI to Debtor occurred on January 4, 1989; that delivery ticket no. 14–100026 contains the notice to owner required by § 429.012 Mo.Rev.Stat., and that the delivery ticket was delivered to an agent or employee of Debtor at the time the material was delivered to Debtor.

■ In addition to pleading the § 429.012 notice, a party claiming a mechanic's lien must prove that such notice was *given and delivered* to the owner on one of the statutorily defined times. *Kenny's Tile and Floor Covering, Inc. v. Curry*, 681 S.W.2d 461, 471 (Mo.App.1984); *Financial Design Consultants, Inc. v. McCarver*, 712 S.W.2d 738, 740 (Mo.App.1986). This is also a determinative element as if notice is not given, or if it is untimely, then "[a]s a matter of law ... the lien could not be created." *American Fence Company of the Midwest v. Summers*, 719 S.W.2d 496, 498 (Mo.App.1986). Through its response and supporting affidavits, LOCI has

narrowed the inquiry as to whether notice was given when the materials were first delivered. On the record, the Court concludes that LOCI failed to give and deliver notice when the materials were first delivered.

Section 429.012 Mo.Rev.Stat. provides that notice shall be provided, prior to receiving payment in any form of any kind from such person:

(a) either at the time of the execution of the contract,

(b) when the materials are delivered,

(c) when the work is commenced, or

(d) delivered with the first invoice, a written notice ...

Neither affidavit submitted by LOCI avers that the § 429.012 Mo.Rev.Stat. notice was given to the Debtor prior to Debtor's first payment to LOCI. As such, the affidavits alone fail to rebut the Trustee's contention that notice was insufficient. Delivery ticket 14–100026 [12] clearly contains the § 429.012 notice in bold print. However, the ticket is unsigned.

Additionally, each affidavit states "[T]he first delivery of materials by LOCI to North Port Associates, Inc. occurred on January 4, 1989." However, these statements conflict with the positions and concessions taken and made by LOCI throughout this litigation. First, the Joint Stipulation of Fact signed by counsel for the parties and filed May 13, 1997 states in paragraph 5: "LOCI began performing construction work and providing supplies to the lakeside development of the North Port Project in December of 1988." LOCI stated in pleadings: "The date of the furnishing of the first item of labor, equipment, material, supplies, services, machinery and tools by [LOCI] was in December of 1988 ..." in both the lawsuit to enforce the Original Mechanic's Lien and the lawsuit to enforce the Supplemental Mechanic's Lien.

---

11. Specifically, the Trustee challenges each prong of the timing requirements. First, he argues that notice was not given at the execution of the contract since work began in December 1988 with no written agreement. Additionally, the November 9, 1989 Master Agreement does not contain notice. Next, Trustee argues that LOCI has neither produced or referred to any notice given when materials were first delivered or

work first commenced in December 1988. Finally, Trustee argues that LOCI has not produced or referred to the first invoice which, LOCI alleges, contains the notice. Plaintiff's Motion for Summary Judgement Against Defendant LOCI and Suggestions in Support at 15–16.

12. Trustee's Exhibit 8, page 2.

The Court considers such inconsistencies material and concludes that LOCI did not raise an issue of material fact on the issue of § 429.012 Mo.Rev.Stat. notice being timely given and delivered to the Debtor.

Having found that the mechanic's liens asserted by LOCI fail as a matter of law for failing to plead and timely deliver the statutory notice, the Court need not address Trustee's remaining attacks on the validity of the mechanic's liens.

## CONCLUSION

For these reasons, the mechanics liens asserted by LOCI are unenforceable, and Trustee's Motion for Summary Judgement against Defendant Lake Ozark Construction Industries, Inc. is **GRANTED** in favor of the Trustee and against Lake Ozark Construction Industries, Inc.