## BLEDSOE PLUMBING AND HEATING, INC.,
Respondent,

v.

**Leroy J.C. BROWN, Appellant.**

**No. WD 59522.**

Missouri Court of Appeals,
Western District.

Jan. 8, 2002.

RONALD R. HOLLIGER, Judge.

Leroy J.C. Brown appeals the circuit court's judgment awarding Bledsoe Plumbing and Heating $9,744.29 and placing a lien on his property in rural St. Clair County. Brown raises four points on appeal in his amended brief. Three of those points fail to comply with Rule 84.04(d)(1)(B) or (C) because they fail "to state concisely the legal reasons for appellant's claim of reversible error" and "why in the context of the case, those legal reasons support the claim of reversible error." The standard of review for each point relied on is limited to the determination of whether the circuit court's judgment is supported by substantial evidence, whether it is against the weight of the evidence, or whether the circuit court erroneously declared or applied the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Compliance with Rule 84.04 is not merely a demand of form. Compliance notifies the opposing party of the exact claim being made and to what it specifically must respond. Of equal importance, compliance with the briefing rules permits the reviewing court to consider the claims within the proper standard of review. Perhaps the deficiency in appellant's brief is motivated by his claim that the standard of review is *"de novo"* under Rule 73.01. The proper standard in a bench-tried case is set forth in Rule 84.13(d) and is limited to a review based on the law and the evidence. We no longer engage in a *de novo* review substituting our judgment for that of the trial court.

Because of the following discussion concerning subject matter jurisdiction to establish a mechanic's lien and the deficiencies in Brown's brief, we set forth only a short recitation of the facts. Bledsoe

Plumbing and Heating installed a septic system on Leroy J.C. Brown's land in early 1998. Although the parties did not enter into a written agreement, Mr. Brown called Bledsoe, in February 1998, and was told that the price for a normal residential septic tank would be $3,000 to $5,000. After the telephone conversation, Rick Hostetter, the president of Bledsoe, met with Mr. Brown and his mother, Sharon Brown, at the job site. The system was originally intended to serve one mobile home, but because there was a restaurant on the property, a commercial system was installed. Because the system was a commercial one, a soil analysis had to be done, and a permit had to be obtained from the County Sanitarian. After the County inspection, Bledsoe changed the original plan for the installation. The changes were made because Mr. Brown and his mother asked Bledsoe to connect both of the trailers on the lot to the system, which required installing larger diameter lines at a greater depth and installation of a bigger tank. During the course of the work, Bledsoe performed additional jobs at the site, including electrical work to supply the trailer with electricity, installation of a hot water heater, repair of water lines, rewiring a light, replacing sinks and faucets, and replacing some indoor plumbing. Mr. Brown and his mother requested that the work all be billed together. The work required Bledsoe to subcontract a backhoe operator, and, because the land was waterlogged, Bledsoe had to deliver gravel to the site.

The work was done between February 23rd and April 23rd, 1998. The work was delayed for some time because of rain, but was eventually completed except for the grading over the lines in the lot. After completing the work, Bledsoe sent a bill to Sharon Brown for $12,744.29. Mr. Brown called Bledsoe and told them that he would not pay. Bledsoe did not return to the site to finish the grading. Bledsoe sent Mr. Brown a notice of intent to file a mechanic's lien at the same address they had sent the bill, which was Brown's mother's address, at the restaurant on the lot. After Bledsoe sent this notice, Mr. Brown paid $3,000. Bledsoe then filed the lien for $9,744.29. The lien reflected that $3,000 had been paid on the original bill of $12,744.29. After a bench trial, the Bates County Circuit Court issued a judgment in favor of Bledsoe for $9,744.29, finding that Bledsoe was entitled to the lien. The trial court also awarded Bledsoe interest at the rate of nine percent per annum from April 24, 1998, which was the day after the work was completed. The trial court made no factual findings.

Before addressing the particulars of Brown's brief, we must first consider the issue of the trial court's subject matter jurisdiction to establish a mechanic's lien. No complaint was made, either below or in appellant's brief, regarding such jurisdiction. This court may *sua sponte* raise the issues of whether the trial court had subject matter jurisdiction and whether the pleading stated a claim upon which relief could be granted. Rule 84.13(a). *Roy v. Dept. of Corrections*, 23 S.W.3d 738, 744 (Mo.App.2000).

Because Bledsoe contracted directly with Brown, the owner of the property, for the improvements, Bledsoe is the original contractor, rather than a subcontractor. *Kenny's Tile & Floor Covering, Inc. v. Curry*, 681 S.W.2d 461, 471–72 (Mo. App.1984). Under § 429.100 RSMo, a subcontractor must send a notice to the owner of the property ten days before it files a mechanic's lien. The same is not required of original contractors. Because the owner knows whether or not the original contractor has been paid, the owner is not entitled to ten days' notice before the

original contractor files a lien. *Dave Kolb Grading, Inc. v. Lieberman Corp.*, 837 S.W.2d 924, 936 (Mo.App.1992). Since Bledsoe cannot be considered a subcontractor, Bledsoe was required to file a different type of notice pursuant to § 429.012 RSMo.

Section 429.012 provides in relevant part:

1. Every original contractor, who shall do or perform any work or labor upon, or furnish any material, fixtures, engine, boiler or machinery for any building, erection or improvements upon land, or for repairing the same, under or by virtue of any contract, or without a contract if ordered by a city, town, village or county having a charter form of government to abate the conditions that caused a structure on that property to be deemed a dangerous building under local ordinances pursuant to section 67.410, RSMo, shall provide to the person with whom the contract is made or to the owner if there is no contract, prior to receiving payment in any form of any kind from such person, (a) either at the time of the execution of the contract, (b) when the materials are delivered, (c) when the work is commenced, or (d) delivered with first invoice, a written notice which shall include the following disclosure language in ten-point bold type:

NOTICE TO OWNER

FAILURE OF THIS CONTRACTOR TO PAY THOSE PERSONS SUPPLYING MATERIAL OR SERVICES TO COMPLETE THIS CONTRACT CAN RESULT IN THE FILING OF A MECHANIC'S LIEN ON THE PROPERTY WHICH IS THE SUBJECT OF THIS CONTRACT PURSUANT TO CHAPTER 429, RSMO. TO AVOID THIS RESULT YOU MAY ASK THIS CONTRACTOR FOR "LIEN WAIVERS" FROM ALL PERSONS SUPPLYING MATERIAL OR SERVICES FOR THE WORK DESCRIBED IN THIS CONTRACT. FAILURE TO SECURE LIEN WAIVERS MAY RESULT IN YOUR PAYING FOR LABOR AND MATERIAL TWICE.

 This notice is an essential element of a mechanic's lien. *Mitchell Eng'g Co. v. Summit Realty Co., Inc.*, 647 S.W.2d 130, 138 (Mo.App.1982). Absent pleading and proof that this notice was provided to the owner, the circuit court does not have subject matter jurisdiction to impose a mechanic's lien. *Fin. Design Consultants v. McCarver*, 712 S.W.2d 738, 740 (Mo.App. 1986).

 Bledsoe pleaded generally that it provided a notice to Brown ten days before filing its lien statement. The petition did not refer to any statutory basis for the notice given. Although the petition alleges the attachment of the form of notice, none is included with the copy of the petition in the Legal File. Included in the exhibits is, however, a notice to Brown dated approximately ten days before the filing of the lien statement. This notice is of the type generally provided by subcontractors and does not comply with § 429.012 in substance or in form. The failure of an original contractor to provide notice that comports with the requirements and words of § 429.012 renders a lien invalid. *Gauzy Excavating & Grading Co. v. Kersten Homes, Inc.*, 934 S.W.2d 303, 305 (Mo. banc 1996). Since Bledsoe contracted directly with Brown to perform this work, it was an original contractor, and its failure to plead and prove this notice would be fatal to its lien. Because we raise this issue *sua sponte* and because Bledsoe did generally plead notice, we will remand this matter so that Bledsoe may, if it can, prove that it gave the notice required un-

der § 429.012. If it cannot, then the trial court may not enter a judgment establishing a mechanic's lien.

█ Because the issue of the personal judgment entered against Brown is divisible from the issue of the propriety of the mechanic's lien, we must still examine Brown's brief, to the extent that we can, as that portion of the judgment below is affected. In his first three points Brown never sets forth any basis for alleged error by the trial court. We cannot determine whether he claims that the trial court's judgment lacks substantial evidence to support it, erroneously declares or applies the law, or is against the weight of the evidence. Although in some instances we may look, if we so choose, to the argument portion of the brief to discern the exact error alleged, such review is of no avail herein. Bledsoe's frustrated attempt to speculate as to what Brown claims as trial court error demonstrates the importance of the brief's deficiency. We share that frustration and decline to consider the first three points. They appear, as Bledsoe observes, to be merely a factual re-argument of the issues before the trial court.

█ The trial court awarded Bledsoe prejudgment interest at the rate of nine percent per annum retroactive to April 24, 1998, the date that work was completed. Brown argues that this was inappropriate, because, since the bill was sent to his mother, demand was never made. There was testimony, however, that the bill was sent to his mother's address at his request. Bledsoe concedes that the award of prejudgment interest should date back only to the date of its demand. Upon remand, prejudgment interest should be recalculated to the date of the demand sent to Brown's mother's address.

The cause is reversed and remanded for further proceedings consistent with this opinion.

EDWIN H. SMITH, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.